The STATE of Ohio, Appellee,

v.

BONIFAS, Appellant.

[Cite as *State v. Bonifas* (1993), 91 Ohio App.3d 208.]

Court of Appeals of Ohio,
Putnam County.

No. 12–93–5.

Decided Oct. 19, 1993.

*Gary L. Lammers,* Putnam County Assistant Prosecuting Attorney, for appellee.

*Maria Santo,* for appellant.

---

THOMAS F. BRYANT, Judge.

This is an appeal from the judgment entered by the Putnam County County Court convicting appellant Susan E. Bonifas of violating R.C. 2917.21(B), telephone harassment.

The assignment of error is:

"The trial court committed an error of law by overruling defendant-appellant's motion for acquittal pursuant to Crim.R. 29 where the state failed to prove beyond a reasonable doubt each material element of the offense of telephone harassment."

In *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus, the Supreme Court held:

"Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, the Supreme Court held that the weight of the evidence in a criminal case is to be tested on appeal as follows:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"

Appellant was charged with violating R.C. 2917.21(B), which provides:

"No person shall make or cause to be made a telephone call, or permit a telephone call to be made from a telephone under his control, with purpose to abuse, threaten, annoy, or harass another person."

The complaint against appellant alleges that she engaged in a continuing course of telephone calls during the period of time between August 1, 1992 and February 15, 1993, with the purpose to abuse, annoy, or harass the complainant. At the close of the state's evidence, the trial court overruled appellant's motion pursuant to Crim.R. 29(A) for a judgment of acquittal.

[redacted] In her brief, appellant argues that based on the evidence before the trial court, reasonable minds could not have found every element of the offense charged to have been proven beyond a reasonable doubt "for there was no evidence presented to prove the purpose of the calls or whether they were made with the specific intent to abuse, annoy, or harass."

The state presented testimony of the complainant that he received telephone calls "at all times of the night, all the time" and that he received them in the "evening more often but a lot of calls when I'm in bed at night." He further testified, "At times she has talked, and yes, I do recognize the voice and I know it's Susie Bonifas."

Timely objections to the complainant's testimony based on his speculation about unidentified telephone callers and calls made in time periods other than charged in the complaint properly were sustained by the trial court and, we presume, disregarded in its consideration of appellant's motion for acquittal.

When asked the content of the calls made within the relevant time frame, the complainant answered:

"I can't describe the content because I would hang up on her. I didn't want to hear what she had to say."

The court inquired about the words used by the caller, to which query the complainant answered:

"At one time she said something about her brother over the phone. I have no idea. I just know it pertained to her brother. You know, that was about it. I would just hang up. It was her, you know, she would get me out of bed. I didn't want to talk to her."

He continued:

"Yes, I'm a good friend of her brother."

He explained:

"I usually go to bed about 11:00 o'clock."

Only one phone call is specifically identified and described by the complainant as having transpired during the period of time alleged. His testimony in that regard is:

"Susie was knocking on my door at 3:00 in the morning to use my bathroom and I didn't answer the phone [sic] and I didn't know who it was at the time, but then at 5:00 in the morning I get a call and it [sic] says, 'Sorry, Kent, this is Susie, sorry that I woke you up before,' and here it was her knocking at my door, and then she has the nerve to apologize. There she woke me up two times in the middle of the night."

Telephone company records received in evidence upon stipulation of counsel disclose four telephone calls placed from appellant's home telephone to the complainant's home telephone during the time period beginning August 1, 1992 and ending February 15, 1993. The first phone call, lasting one minute or less, was placed December 6, 1992 at 5:05 a.m. Two phone calls of one minute duration or less were placed on December 8, 1992, the first at 8:20 p.m. and the second at 9:44 p.m. A fourth such call originated January 14, 1993 at 2:14 p.m. There is no evidence from which it might reasonably be inferred that calls were made from other locations within the relevant time period.

Considering all the foregoing evidence most favorably for the prosecution, we assume the call of 5:05 a.m. on December 6, 1992 to be the one described by the complainant as a call by appellant to apologize for her earlier personal visit. Another call within the specified time period was said to relate in some fashion to the complainant's good friend, appellant's brother. Presumably, the remaining calls, made for whatever purpose, were terminated peremptorily by the complainant without inquiry or interest in that purpose.

There is no evidence of appellant's ill will or other feelings toward the complainant. There is no evidence or claim of telephone threat or other threat by appellant made to the complainant, and, indeed, the complainant denied receiving any threat from appellant.

Nothing else in the record connects either the appellant or the complainant to some relationship *inter se* or with other persons or activities which might disclose or permit an inference of any other specific purpose of the appellant to telephone the complainant, lawful or not.

▮ It is clear that whatever purpose was stated by appellant when she called, the complainant was annoyed. However, the gravamen of the offense of tele-

phone harassment is not the fact that the recipient of the call is annoyed by the call. Rather, the offense must be proven in terms of the defendant's purpose to abuse, threaten, annoy, or harass the person called.

We believe that no inference of improper purpose of the appellant may be drawn from the state's evidence and that reasonable minds, thus, could not have found all the material elements of a violation of R.C. 2917.21(B) proven beyond a reasonable doubt. Therefore, since the state failed to prove an essential element of the offense charged, the trial court erred by overruling appellant's timely motion for acquittal pursuant to Crim.R. 29(A). The prejudice to appellant is evident, and, thus, we find the assignment of error to be meritorious.

Having found error prejudicial to the appellant as assigned, briefed and shown by the record, we reverse the judgment of the Putnam County County Court and remand the cause to that court with instructions to discharge the appellant.

*Judgment reversed*
*and cause remanded.*

EVANS, P.J., and HADLEY, J., concur.