JOURNAL ENTRY and OPINION.
{¶ 1} Defendant-appellant Ronald Baron appeals from his convictions on five counts of telecommunications harassment in two separate cases that were consolidated for a jury trial.
 {¶ 2} Appellant asserts his trial counsel rendered ineffective assistance by permitting the introduction of improper evidence and by failing to obtain separate trials on the charges. He further asserts trial counsel's actions alienated the trial court and thereby prejudiced the defense in the eyes of the jurors. Finally, appellant asserts four out of his five convictions are unsupported by sufficient evidence.
 {¶ 3} Following a thorough review of the record, however, this court can agree with none of appellant's assertions. Therefore, his convictions are affirmed.
 {¶ 4} Appellant's convictions result from two separate episodes that occurred in his home city of Broadview Heights, Ohio. The day before the first episode, the city's Zoning Inspector, Mary Tyrpak, had mailed a final notification to appellant regarding unsightly items in his yard; the notification stated he would be cited for city code violations if they were not removed immediately. The first episode occurred on June 19, 2001.
 {¶ 5} At approximately 10:30 a.m., part-time secretary Kathleen Kobal sat at her desk at the office of the city's Building and Zoning Department; she was performing her usual duties, including answering the telephone, when a call came. The caller identified himself as appellant. Appellant demanded to speak with Tyrpak.
 {¶ 6} Kobal informed appellant that Tyrpak was in conversation with a previous caller, and asked him if he would like to either leave a message or wait for her. Appellant responded in an irate manner to the query. He refused to accept either option. Sounding upset to Kobal, appellant repeated his demand, called Tyrpak a "pompous ass," and indicated to Kobal he had some sort of problem for which he wanted Tyrpak's immediate attention. Kobal assured appellant that if he left his telephone number, Tyrpak would discuss the matter with him. Appellant terminated the call.
 {¶ 7} Within seconds, however, he called again. Once again, Kobal could not put the call through. Once again, appellant indicated he was upset about something that involved Tyrpak, made agitated comments, and "hung up." This activity continued to take place for nearly an hour. Kobal's attempts to place appellant's calls on hold prompted him only to call again with an increasing level of both frequency and irascibility. Appellant never sought either to leave a message or to state his business with Tyrpak, he simply did "a lot of yelling and screaming and then would hang up."
 {¶ 8} Kobal estimated that appellant telephoned approximately twenty-five times, often causing all three of the department's lines to light at once. Her co-worker, Beverly Brice, noticed these transactions. During this period, Kobal found herself unable to do any other portion of her job duties, and Brice became distracted from hers.
 {¶ 9} Eventually, John Alcorn, the city's Building Inspector, noticed the secretaries' consternation over the series of calls. Alcorn directed Kobal to put one of them through to his office. Alcorn, however, found he, too, was unable to conduct a conversation with appellant; appellant was "irate and abusive" and unwilling to permit Alcorn to address him. Appellant's demeanor caused Alcorn to fear for the safety of the women. Thus, when appellant terminated the call, Alcorn telephoned the police department.
 {¶ 10} Officer Scott Payne promptly responded to the Building and Zoning Department. After Brice had informed him of the goings-on, Payne requested Kobal to complete a written statement regarding the matter, and advised Brice that if appellant's calls continued, the office personnel should tape-record as many as possible. Payne then returned to the police department.
 {¶ 11} Upon his arrival, he noticed Dennis Commerata, the city's Animal Control Officer, filling out a complaint. Commerata told Payne that at approximately 11:20 a.m., he had received a telephone call from appellant. Appellant seemed irate about impound and boarding fees that had been assessed for the city's quarantine of one of his dogs two years previously. When Commerata informed appellant he could not refund the money, appellant told Commerata that "he was going to put a hurt on" the officer.
 {¶ 12} Commerata terminated the call. Within thirty seconds, his line again rang. Appellant belligerently repeated his demand for the return of his money. Commerata stated that he could not help appellant; at that point, appellant retorted "he was going to take [Commerata's] life." Based upon an earlier incident involving appellant that Commerata had observed, he took the threat seriously enough to report it to the police.
 {¶ 13} The following day, June 20, 2001, only Brice had secretarial duty at the office of the city's Building and Zoning department; thus, she answered calls for Tyrpak and Alcorn. Beginning again that morning, appellant repeated his telephonic activities. This time, however, many of his calls were recorded either via the voice-mail feature or personally by Alcorn. Appellant's messages often were pointless, absurd, and irritatingly childish in nature.
 {¶ 14} That afternoon, Payne arrived to retrieve the recordings. One of appellant calls came while Payne was present; therefore, Brice handed him the receiver. Payne addressed appellant by name and identified himself. Immediately, appellant's voice increased in volume, and he directed derogatory comments at Payne. Appellant accused Payne of being a liar, a crooked cop, and a perjurer.
 {¶ 15} Despite Payne's attempts to calm him, appellant remained incensed; appellant made no attempt to listen to Payne's observations that his methods were counterproductive, and warnings that he could not continue to handle his anger in this manner. Consequently, Payne terminated the call. Seconds later, appellant's mother-in-law called the office with appellant yelling loudly in the background. Brice summoned Payne to the receiver; Payne repeated to her what he had told appellant before ending the conversation. Payne took the tape recordings of appellant's calls with him as he left.
 {¶ 16} A month later, the second episode occurred. On July 20, 2001 dispatcher Sonia Becker was on duty at the Broadview Heights Police Department with her co-worker Sherri Spagnola. At approximately 8:00 p.m., Becker took a telephone call from an irate citizen. As were all the calls made to the police station, it automatically was tape-recorded. The caller identified himself as appellant, stated a police officer had been "tailgating" him and made an obscene gesture at him, and demanded to speak to the supervising officer.
 {¶ 17} Becker requested additional information about the incident. Appellant insisted the officer had been in "car 30," that "he had flipped [appellant] off," and that the officer deserved an immediate reprimand. Becker advised appellant that she would have to locate the supervisor, Sergeant Steven Raiff. Appellant thereupon began berating Becker. Becker disconnected his call.
 {¶ 18} Becker next radioed Raiff concerning the call, and received his assurance that he was on his way to the station. While Becker waited, appellant continued to telephone the police station. He repeated his demands. Each time Becker placed him on hold, he would hang up and call again. Soon all of the telephone lines to the police station were alight.
 {¶ 19} Raiff's prompt arrival did little to ease the situation; his assurances to appellant that he would investigate the allegation proved unsatisfactory. During their conversation, appellant insisted he wanted the male officer who had insulted him disciplined, claimed he deserved an immediate apology, and mockingly addressed the sergeant as "Raiffie."
 {¶ 20} Additionally, after the conversation had concluded, appellant continued his telephonic activities. Even as appellant's wife appeared at the station to obtain a complaint form for her husband's use, appellant called, hung up, and called again. Becker later estimated that appellant called thirty to forty times within a half-hour period of time.
 {¶ 21} Eventually, Becker became frustrated and requested Spagnola's assistance. Spagnola's attempts to handle appellant met the same lack of success; appellant at one point addressed her as "Lady," told her she "worked for him," and, further, that "he would have [her] job" for the way she was treating him.
 {¶ 22} Raiff began to investigate appellant's allegation that evening. Only five other officers were on duty; the officer assigned to police car "30" had been Melissa Kennelly. She told Raiff that at approximately 8:00 p.m., she had passed appellant, who was driving his truck in the opposite direction on the highway. As she passed, she noticed appellant "blatantly" displayed his middle finger at her.
 {¶ 23} Kennelly stated she turned her vehicle to follow the truck and soon saw it pull into appellant's driveway. She would have continued on her way, but appellant appeared to signal her, so she stopped her car on the shoulder of the road and opened her passenger-side window. She stated that appellant began shouting obscenities at her; her response was simply to advise him to move further into his driveway before she continued her patrol.
 {¶ 24} In late 2001, two separate indictments eventually were issued against appellant as a result of these two episodes. The first indictment, CR-412038, pertained to June 19-20, 2001; the second, CR-416277, pertained to July 20, 2001. Both cases charged appellant with telecommunication harassment, R.C. 2917.21. The first contained three counts, with Tyrpak, Commerata, and Payne named as the victims. The second contained two counts with Becker and Spagnola named as the victims. All five counts contained a furthermore clause for appellant's 1999 conviction of the same offense.
 {¶ 25} Upon his arraignments, appellant retained counsel to represent him, and his cases both were assigned to the same trial court. The record reflects counsel filed the requisite discovery motions. The record further reflects many pre-trial hearings were conducted in the ensuing months. During this period, the trial court referred appellant for a psychological evaluation; the resulting report declared appellant was both sane and competent.
 {¶ 26} Appellant's jury trial commenced in September 2002. The state presented the testimony of fifteen witnesses and introduced the tape recordings into evidence. Appellant testified in his own behalf and presented his wife and his mother-in-law as witnesses. The jury ultimately found appellant guilty of all five charges. After ordering a presentence report, the trial court sentenced appellant to concurrent terms of incarceration of nine months on each of the three counts in CR-412038, and concurrent terms of eleven months on the two counts in CR-416277, with the terms in the two cases to be served consecutively to each other.
 {¶ 27} Appellant presents three assignments of error for review. Since the first two are related, they are addressed together as follows:
 {¶ 28} "I. Appellant Ronald Baron was denied effective assistance of counsel.
 {¶ 29} "II. Defense counsel's ineffectiveness prompted intervention from the trial judge that resulted in an unfair trial."
 {¶ 30} Appellant asserts that the attorney he retained to represent him provided inadequate assistance in failing to object to the trial of the two cases together and in permitting the introduction of improper evidence. Appellant further claims counsel's overall representation was so poor that it caused the trial court to intervene often enough to taint the jury against him. This court disagrees.
 {¶ 31} Appellant's claim of ineffective assistance of counsel requires him to demonstrate that counsel not only fell below an objective standard of reasonable representation, but that he was prejudiced thereby. State v. Bradley (1989), 42 Ohio St.3d 136. Trial counsel is strongly presumed to have acted in a professional manner; this court may not second-guess trial counsel's decisions on matters of trial strategy.Vaughn v. Maxwell (1965), 2 Ohio St.2d 299. Moreover, counsel is not required to perform vain acts. State v. Johnson (May 31, 2001), Cuyahoga App. No. 78305.
 {¶ 32} Each of appellant's challenges of counsel's performance fall into the foregoing categories.
 {¶ 33} Appellant first disputes trial counsel's failure to object to the trial court's decision to try both cases together. In a related argument, he contends permitting the cases to be tried together permitted the wholesale introduction into evidence that appellant had previous confrontations with city authorities. The issue of severance, however, is one left to the trial court's discretion. State v. Prade (2000),139 Ohio App.3d 676.
 {¶ 34} Nothing in the record supports a conclusion the trial court abused its discretion in trying appellant's two cases together. State v.Czajka (1995), 101 Ohio App.3d 564. From the time the second case was assigned to the same trial court, they were considered together. Indeed, the records in the cases demonstrate the same dates of the pretrial hearings, the same motions filed, and the same orders issued. This is unsurprising, since they involved similar crimes, locations, victims, witnesses and evidence.
 {¶ 35} The record further reflects trial counsel's strategy was to portray appellant as a Broadview Heights citizen so persistent and passionate in his convictions that he was disliked by many; consequently, the city authorities both ignored him at every turn and took every opportunity to "victimize" him. Trying both cases together was a tactic that added weight to this defense; therefore, trial counsel would have had no reason to challenge that decision.
 {¶ 36} Appellant also complains trial counsel should have objected to permitting the state to introduce into evidence his prior convictions for the same offense and the tape recordings of the calls appellant made. This would have been an exercise in futility. The tapes constituted relevant evidence, the probative value of which far outweighed any danger of prejudice. Evid.R. 403, 404(B). Similarly, since each count contained a furthermore clause, proof of appellant's prior convictions was an essential element of the offenses. In the face of overwhelming evidence of appellant's guilt, trial counsel reasonably included the challenged evidence within the scope of the defense theory.
 {¶ 37} Appellant additionally complains that trial counsel's actions required so much "negative" intervention on the trial court's part that the jury eventually must have been alienated. A review of the entire transcript of trial, however, fails to support this charge. Rather, the trial court only followed its prerogative to exercise reasonable control over the interrogation of witnesses and the presentation of evidence. Evid.R. 611.
 {¶ 38} The trial court intervened when necessary during the proceedings in order to direct each party to comply with the proper method of presenting the case. Defense counsel simply sought to be as passionate in defense of his client as his client was in seeking enforcement of his rights. Indeed, at one point, the trial court commented to appellant during a sidebar discussion that he had a "smart strategic lawyer" who employed an "intelligent" method.
 {¶ 39} A review of the complete record thus does not permit this court at this juncture to declare counsel's actions in presenting appellant's defense were either inappropriate or deficient; effective assistance of counsel does not guarantee favorable results. State v.Hart (1988), 57 Ohio App.3d 4. The record, instead, objectively supports a conclusion that trial counsel provided reasonable representation. Statev. Smith (1985), 17 Ohio St.3d 98.
 {¶ 40} Accordingly, appellant's first and second assignments of error are overruled.
 {¶ 41} Appellant's third assignment of error states:
 {¶ 42} "III. The evidence was insufficient as a matter of law to convict Ronald Baron of telecommunications harassment for counts 2 and 3 in CR 412038 and counts 1 and 2 in CR 416277 (Groups 1, 3 and 4)."
 {¶ 43} Appellant argues only his conviction for telecommunications harassment of Commerata was supported by sufficient evidence. He contends the evidence failed to prove his purpose in making the calls to the Building and Zoning Department and to the Police Department was "to abuse, threaten, or harass" as set forth in R.C. 2917.21(B). Appellant's contention lacks merit.
 {¶ 44} The sufficiency of evidence is a question of law, and is essentially, "a test of adequacy." State v. Thompkins, 78 Ohio St.3d 380,386, 1997-Ohio-52. The evidence must be viewed in a light most favorable to the prosecution to determine if reasonable minds can reach different conclusions as to whether the material elements of an offense are proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421,1997-Ohio-372; State v. Martin (1983), 20 Ohio App.3d 172.
 {¶ 45} In this case, as to June 19 and 20, 2001, Kobal, Brice and Alcorn testified appellant began calling in the morning on both days. Appellant refused to be placed on hold, to wait on the line for Tyrpak, to state his business, and to leave his telephone number for a return call. Appellant continually called and then hung up on each of these days; the secretaries estimated appellant called twenty-five times in less than an hour on the first day. The witnesses indicated that for those time periods, his telephone antics occupied almost exclusively both the department lines and the secretaries' attention without any reason.
 {¶ 46} Additionally, the recordings of appellant's calls on the second morning demonstrate he had no legitimate purpose in his activity, since he often merely made noises or facetious statements before hanging up. Payne testified when he came on the line, appellant verbally attacked him without any provocation; he indicated appellant continued to yell at him without any effort to converse, which led Payne eventually to terminate his efforts to reason with appellant.
 {¶ 47} The police dispatchers testified appellant used similar tactics on July 20, 2001. Although appellant presented what initially appeared to be a legitimate complaint, he would not be satisfied by any promise to investigate the matter. Instead, he continually called the police department, loudly ranted about the incident, hung up, then called again. Spagnola estimated appellant called the police station approximately forty times in a half-hour period of time; a portion of the tape recordings demonstrates appellant made seven calls between 8:04 p.m. and 8:08 p.m. alone. Moreover, Spagnola informed appellant his wife had arrived to obtain a complaint form; nevertheless, appellant did not desist. Finally, the police officers who testified proved appellant's complaint had been completely false.
 {¶ 48} Viewing this evidence in a light most favorable to the prosecution, a rational fact-finder could determine that in making these calls, appellant meant only to annoy and impede city employees while they were conducting city business. Consequently, appellant's convictions were supported by sufficient evidence. State v. Adkins (Nov. 13, 2000), Butler App. No. CA99-03-050.
 {¶ 49} Appellant's third assignment of error, therefore, is also overruled.
 {¶ 50} Appellant's convictions are affirmed.
FRANK D. CELEBREZZE, JR., J. and SEAN C. GALLAGHER, J. concur.
(Sitting by assignment, Judge John T. Patton, Retired, of the Eighth District Court of Appeals.)