OPINION
{¶ 1} Defendant-appellant Arvindbha N. Patel appeals his conviction for telephone harassment entered in the Eastern Division of the Belmont County Court. Appellant sets forth one assignment of error through counsel, contending that the judgment was against the manifest weight of the evidence. Appellant also presents seven pro se arguments regarding additional perceived errors. For the following reasons, the judgment of the trial court is hereby reversed and appellant's conviction and sentence is vacated.
 STATEMENT OF THE CASE {¶ 2} On February 25, 2003, Gary Hoffman filed a complaint against appellant with the Belmont County Prosecutor. Hoffman alleged that appellant, who was his employer at the time, called him on February 12, 2003 and left a harassing telephone message on Hoffman's answering machine. Based on this information, the State of Ohio filed a complaint against appellant on March 12, 2003, charging him with telephone harassment in violation of R.C.2917.21(B).
 {¶ 3} A bench trial was held on June 19, 2003, at the end of which appellant was found guilty. He was sentenced to 30 days in jail, all of which were suspended upon the following conditions: appellant must pay a $300 fine and $70 for court costs, complete one year of unsupervised probation during which no Ohio or local laws may be broken by appellant, and complete 20 hours of community service.
 {¶ 4} Appellant timely appealed the trial court's decision. Initially appellant was represented by counsel on appeal and counsel filed a brief on behalf of appellant. However, on October 21, 2003, appellant filed with this court a "Motion to Cease Present Counsel," and requested that the previously filed brief be disregarded in favor of a new one filed by him. This pro se brief submitted by appellant does not properly set forth assignments of error, but instead cites specific areas where appellant believes mistakes were committed. In the interest of justice, we will consider both briefs in deciding this case.
 ASSIGNMENT OF ERROR {¶ 5} "THE COURT ERRED IN CONVICTING THE DEFENDANT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the evidence is more believable or persuasive.State v. Young, 2d Dist. No. 19466, 2003-Ohio-4706. In a bench trial, the court assumes the fact-finding function of the jury. Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, it must be determined that the court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 7} Appellant was charged and convicted of telephone harassment in violation of R.C. 2917.21(B), which provides that "[n]o person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under a person's control, with the purpose to abuse, threaten, or harass another person." R.C.2917.21(B). When adjudicating a charge of telephone harassment, the key issue is not whether the alleged victim is annoyed or otherwise affected by the call; rather, the purpose of the person who made the call is at the heart of the offense. State v.Bonifas (1993) 91 Ohio App.3d 208, 211-212.
 {¶ 8} Appellant left the following message on Hoffman's answering machine:
 {¶ 9} "Gary (inaudible) to Lisa or any (inaudible). Don't fucking make trouble there, okay. You want to fucking go ahead and finish, you finish, but don't motherfucking go there. Okay. Bye. Faggot."
 {¶ 10} At trial, Hoffman testified that he, his girlfriend, and his children were all threatened by the message. Hoffman also testified that although the only charge filed stemmed from one phone call made in February, appellant had been making harassing phone calls to him since October of 2002.
 {¶ 11} Hoffman then stated that he continued to work for appellant during this time, and he agreed to extend his work agreement with appellant into February of 2003, even extending their arrangement after their original agreement ended in late December 2002. When questioned as to why he would continue to work for someone who was allegedly harassing him for months, Hoffman stated that his "basic motivation was so [he] could get paid." (Tr. 20).
 {¶ 12} However, after Hoffman testified on direct examination that the phone call made him feel threatened and harassed, he then stated on cross-examination that appellant only called in order to vindicate himself in regards to a problem with an employee named Lisa. Hoffman stated that appellant "called to chew [him] out in front of Lisa so he wouldn't feel as bad because a girl was crying on his shoulder." (Tr. 26).
 {¶ 13} Most interesting is Hoffman's next interpretation of the statement, wherein the following line of discussion takes place:
 {¶ 14} "Q. Isn't it true that Mr. Patel was in fact calling you because of the harassing phone calls that you were making to his place of business, disrupting his business, and telling you to don't cause any trouble there?
 {¶ 15} "A. No, actually it sounded like an invitation to go back and complete my work if I so chose. I can play it again.
 {¶ 16} "MESSAGE PLAYED AGAIN.
 {¶ 17} "Q. Okay. So he's telling you . . .
 {¶ 18} "A. To go finish.
 {¶ 19} "Q. Well, that's what he says second, but before that he says don't go back there and cause trouble. Don't cause trouble. If you want to finish, you can finish but don't cause trouble. Isn't that in essence what he's saying?
 {¶ 20} "A. Right. He didn't want to — I'm taking it now that he don't want me to talk to none of his employees, you know, so I don't." (Tr. 28).
 {¶ 21} In addition to the varying statements given by Hoffman during his testimony, it was also brought to light that he has previously been convicted of "false pretenses" in relation to stopping payment on a check. Hoffman further testified that he was convicted of obstruction for making false statements under oath regarding his bankruptcy filings.
 {¶ 22} Appellee also called Hoffman's live-in girlfriend, Cari McAtee, to testify. She testified to being present for phone calls prior to February 12. Commenting on the phone call at issue, McAtee stated, "[Gary] wasn't too happy" to hear it. (Tr. 36).
 {¶ 23} After appellee's case-in-chief, appellant presented the testimony of Donald Chitwood, another employee of appellant. Chitwood testified that in the days leading up to February 12, Hoffman made numerous calls to the hotel where Chitwood worked for appellant. Chitwood stated that Hoffman would ask whether Chitwood ever had trouble getting paid by appellant and was generally "trying to say bad things about [appellant]." (Tr. 44). Chitwood testified that he felt Hoffman was attempting to and did in fact interfere with appellant's business. Id. After appellant called to report this alleged harassment, Chitwood made a statement with the Belmont County Sheriff's Department on February 15, 2003, regarding these phone calls. A copy of the complaint was entered into evidence at trial.
 {¶ 24} After Chitwood's testimony, appellant testified on his own behalf. Appellant admitted leaving the message on Hoffman's answering machine that was played in court. Id. at 49. Appellant recounted his reason for calling Hoffman, giving the following testimony:
 {¶ 25} "Q. * * * What you're telling the Court is that you made that phone call because Lisa came to you in a distraught manner?
 {¶ 26} "A. Yes.
 {¶ 27} "Q. And when Lisa came to you, why did she come to you and why was she distraught?
 {¶ 28} "A. Because Gary was calling (inaudible).
 {¶ 29} "Q. Okay. Who is Lisa?
 {¶ 30} "A. Lisa was a housekeeper (inaudible).
 {¶ 31} "* * *
 {¶ 32} "Q. Okay. When she came to you, were you upset with what she had indicated to you?
 {¶ 33} "A. Yes.
 {¶ 34} "Q. And did you feel that you needed to say something to Mr. Hoffman about his contact with your employees?
 {¶ 35} "A. Yes. (inaudible) telling lies (inaudible).
 {¶ 36} "Q. Okay. Did you feel that what she had indicated to you, if it was true, interfered with your business?
 {¶ 37} "A. Yes.
 {¶ 38} "Q. Okay. What was the purpose of you making the phone call to Mr. Hoffman?
 {¶ 39} "A. (inaudible) my employees (inaudible).
 {¶ 40} "Q. So the purpose of the call was to tell him don't bother the employees. That was definite.
 {¶ 41} "A. Yes, yes.
 {¶ 42} "Q. Okay. You wanted to also indicate to him that if he wanted to continue to work, he could do that. You would permit him to continue to work.
 {¶ 43} "A. Yes.
 {¶ 44} "Q. Provided he didn't bother the employees.
 {¶ 45} "A. Yes." (Tr. 49-51).
 {¶ 46} As previously explained, the gravamen of the offense is not how the recipient of the call interprets the call but instead the intent of the caller. Bonifas,91 Ohio App.3d at 211-212. In light of appellant's testimony, it is difficult to understand how the trial court determined that appellant intended to abuse, threaten, or harass Hoffman with his phone message. Furthermore, Hoffman's credibility is dubious at best. He was by his own admission convicted of false pretenses and of obstruction, with both convictions stemming from dishonest acts. Moreover, he gave varying accounts of the events surrounding the February 12 phone call.
 {¶ 47} In fact, at one point Hoffman corroborated appellant's story, stating that he found the call to be "an invitation to go back and complete [his] work" without any trouble. (Tr. 28). This is in fact the purpose appellant gave for the phone call. Appellant stated that Hoffman was harassing his employees, a fact that is supported by the Sheriff's report that was filed ten days prior to Hoffman's complaint. A third party, Chitwood, also testified regarding Hoffman's harassment. Therefore, appellant's explanation that he called to tell Hoffman that he could complete his work if he wanted, but to stop making trouble, is quite credible. More importantly, this is the notion that the actual words of the message convey.
 {¶ 48} Granted, the language appellant used in the message is reprehensible. He clearly could have conveyed the purpose of his call without profanity or name calling. However, as the actual purpose of his making the call was not to use profanity and name calling, the mere inclusion of them in the message does not raise the incident to the level of telephone harassment. To hold so would essentially mean that any call placed with a legitimate purpose could somehow transform into telephone harassment by the use of profanity, an end that is not warranted by the existing statute. For the aforementioned reasons, this assignment of error is meritorious.
 {¶ 49} As previously mentioned, appellant makes several more pro se arguments in addition to the manifest weight question. While these arguments are not assignments of error per se, this court will now proceed to address those arguments.
 APPELLANT'S FIRST PRO SE ARGUMENT {¶ 50} Appellant labels his first pro se argument "State Failed to Establish a Motive Beyond a Reasonable Doubt." Appellant's argument can be summarized as follows: citingBonifas, appellant contends that because R.C. 2917.21(B) states in part that "[n]o person shall make * * * a telecommunication * * * with the purpose to abuse, threaten, or harass another person (emphasis added)," appellee was required to prove the specific purpose, or motivation, that appellant himself would have to abuse, threaten, or harass Hoffman. However, appellant misreads both the underlying statute and Bonifas. While the State must prove beyond a reasonable doubt that the defendant intended to abuse, threaten, or harass the subject, they need not prove the exact motive behind the harassment. Thus, while the State must prove that there was an ill-intent, they need not prove the specifics of that intent but only that it existed. Consequently, appellant's first pro se argument fails.
 APPELLANT'S SECOND PRO SE ARGUMENT {¶ 51} Appellant titles his second pro se argument "Manufacturing of Evidence." At trial, appellee confronted appellant with an invoice allegedly prepared by Hoffman for appellant. The invoice, marked States' Exhibit 2, was used only for impeachment purposes, and thus it was not entered into evidence. However, appellant argues that because he did not previously see the invoice, it was "manufactured" by appellee. Simply because appellant is unaware of a document's existence does not render the document fake and, thus, without further proof, this contention must fail.
 {¶ 52} Appellant also argues that a resignation letter allegedly prepared by Hoffman to be sent to appellant was also "manufactured" by appellee. This letter was mentioned in passing during the direct examination of McAtee. The letter was not, however, entered into evidence. It is not clear whether the letter was even brought into court. Moreover, as is the case with the invoice discussed above, appellant has no evidence other than his bare assertion that appellee fraudulently constructed evidence. This is simply not sufficient evidence to sustain such a grave accusation. Accordingly, appellant's second pro se argument is without merit.
 APPELLANT'S THIRD PRO SE ARGUMENT {¶ 53} Appellant designates his third pro se argument "Breech of State of Ohio and Federal Civil Right Law." It was shown at trial that on February 15, 2003, appellant filed a report with the Belmont County Sheriff's Department, claiming that Hoffman was harassing appellant and his employees. The report reads in part:
 {¶ 54} "* * * Since then [appellant] state's [Hoffman] has been calling the Hotel harassing him and also stops in and bothers the customers and the staff. [Appellant] states [Hoffman] is accusing him of Sexually harassing girls and stating that he owes him about 8000.00 dollars for work he has done around the Hotel. [Appellant] states [Hoffman] told him he would be back every day to harass him and that he would be the biggest trouble in his life. [Appellant] stated that [Hoffman] called into the Hotel about 50 times last night making harassing phone calls to the Staff.
 {¶ 55} "I talked to Donald Chitwood, an Employee of [appellant] who stated he has talked to [Hoffman] on the phone and [Hoffman] told him that [appellant] owed him a lot of money and telling him Sexual things about [appellant] trying to get him into trouble.
 {¶ 56} "I talked to Lisa Huggins who is an Employee of [appellant] who stated that [Hoffman] calls her house and states that [appellant] stole a Bull Float used for concrete work from him and that he owed him a lot of money. [Hoffman] also stated that [appellant] also told him that when she calls off work that I (sic) am lying about it, trying to cause trouble between us. (Sic).
 {¶ 57} "Statements taken from all parties involved. [Appellant] states he wants charges filed and to be left alone.
 {¶ 58} "I advised [appellant] a report would be sent in and that if [Hoffman] comes back to call right away and we will come and talk to him." Defense Exhibit 3.
 {¶ 59} The report lists the dates of occurrence from February 13 to February 15. The report was filed on February 15, with no charges resulting from the report. The call at issue in the case sub judice is claimed to have been made on February 12. Hoffman filed a complaint regarding the message on February 25.
 {¶ 60} Appellant claims that the discrepancy in the treatment of the two cases is attributable to discrimination. Appellant writes that he is "not of Caucasian decent." Additionally, as he mentions living peaceably in the United States for the past 30 years, as such one can infer that the Unites States is not his country of origin.
 {¶ 61} In State v. Flynt, the Supreme Court set out the burden facing a defendant claiming to be the victim of intentionally discriminatory prosecution:
 {¶ 62} "`To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.'" State v. Flynt (1980),63 Ohio St.2d 132, 134, quoting United States v. Berrios (C.A. 2, 1974), 501 F.2d 1207, 1211.
 {¶ 63} Seeing as how appellant failed to recognize, let alone meet, the burden facing him, he cannot prevail on mere accusations. Thus, this pro se argument is also without merit.
 APPELLANT'S FOURTH PRO SE ARGUMENT {¶ 64} Appellant labels his fourth pro se argument "Perpetrator for Bias Judge." Prior to the criminal trial at hand, Hoffman instituted two civil complaints against appellant in the Eastern Division of the Belmont County Court. However, in a journal entry dated March 4, 2003, Judge D. William Davis stated that "Due to conflict of interest with Judge D. William Davis, cases are hereby transferred to Western Division Court * * * for all further proceedings. * * *." A copy of this journal entry is attached to appellant's pro se brief. However, Judge D. William Davis presided over the present trial. The complaint from which this trial stemmed was filed nine days after the voluntary recusal from the civil trial, on March 13, 2003. Interestingly, when the subject of the civil trial came up during the course of the criminal trial, Judge Davis said, "I didn't hear the civil case, so I'm not sure — It may have gotten transferred." (Emphasis added). (Tr. 6).
 {¶ 65} To further support his argument, appellant points out that, in announcing the outcome of the case, the judge stated, "it is clear to the court that this was a harassing call, I think it was intended that way by Mr. Patel." Id. at 68. Appellant argues that this proves that appellee's case was not proven beyond a reasonable doubt. Appellant also finds fault with the judge in general for believing the testimony of Hoffman.
 {¶ 66} Appellant argues that these incidents are clear evidence of bias on the part of the judge. However, a reviewing court will always presume an absence of bias or prejudice on the part of a trial judge. State v. Hunter, 151 Ohio App.3d 276,2002-Ohio-7326, at ¶ 6. To overcome this presumption, an appellant must bring to light evidence that satisfactorily demonstrates the alleged bias. Okocha v. Fehrenbacher (1995),101 Ohio App.3d 309, 322. Moreover, disagreeing with the ultimate disposition of the case does not support an accusation of bias.Hunter, 2002-Ohio-7326, at ¶ 6. As the above stated contentions are insufficient to demonstrate the bias appellant alleges, his argument of judicial bias fails. This pro se argument is without merit.
 APPELLANT'S FIFTH PRO SE ARGUMENT {¶ 67} Appellant designates his fifth pro se argument "Obstruction of Rules of Evidence." Appellant puts forth that the rules of evidence preclude anyone who previously lied under oath from testifying in court again, for such a person "cannot be a reliable source of evidence and his testimony should have been stricken from the record." Appellant applies this "rule" to Hoffman, insisting that his previous convictions necessitate the revocation of his testimony from the record.
 {¶ 68} However, appellant does not provide a citation to this "rule of evidence." That is because such a rule does not exist. While Evid.R. 609(A)(3) does state that "evidence that any witness * * * has been convicted of a crime is admissible if the crime involved dishonesty or false statement," such evidence is to be admitted "[f]or the purpose of attacking the credibility of a witness." Thus, while Hoffman's convictions should have been taken into consideration when determining the credibility of his statements, it was properly presented in the record with all other testimony given. Appellant's fifth pro se argument is without merit.
 APPELLANT'S SIXTH PRO SE ARGUMENT {¶ 69} Appellant titles his sixth pro se argument "Inflammatory Evidence." Appellant complains that irrelevant evidence about himself was admitted for the sole reason of damaging his reputation. Indeed, McAtee made statements during her direct examination that she had been sexually harassed by appellant. While the relevance of this evidence is not readily apparent, it is of no consequence as appellant failed to object to this testimony. Failure to object at trial waives all subsequent arguments, save for plain error. State v. Jones,91 Ohio St.3d 335, 343, 2001-Ohio-57. "A plain error does not exist unless, but for the error, the outcome of the trial would have been different." State v. Joseph, 73 Ohio St.3d 450, 455,1995-Ohio-288. As it cannot be said that, but for the admission of the testimony that appellant sexually harassed McAtee, the trial would have a different outcome, appellant waived this argument. Thus, this pro se argument is without merit.
 APPELLANT'S SEVENTH PRO SE ARGUMENT {¶ 70} Appellant labels his final pro se argument "Inadequate Representation on Behalf of Defendant." Appellant claims that he was prejudiced by ineffective assistance of counsel. To demonstrate a claim of ineffective assistance of counsel, an appellant must show: (1) that counsel's performance fell below an objective standard of reasonable representation, and (2) but for counsel's deficient performance, the outcome of the trial would have been different. State v. Group, 98 Ohio St.3d 248,2002-Ohio-7247, at ¶ 132.
 {¶ 71} Appellant claims that counsel did not return his phone calls and would not schedule an appointment with him before the trial. As a result, appellant states, counsel was "completely unprepared" for the trial. While appellant may feel that there were aspects of the case counsel did not examine, it appears that counsel was prepared for trial. The prior history between appellant and Hoffman, Hoffman's admissible criminal convictions, and appellant's police report regarding Hoffman are just a few of the important matters that counsel was prepared to discuss. Appellant also claims that counsel did not prepare an opening or closing statement. However, the transcript reveals that neither side gave an opening statement, and appellant's counsel did in fact give a closing statement. Therefore, appellant's claims in these regards are incorrect, and it cannot be said that counsel fell below the reasonable standard of representation in this regard.
 {¶ 72} Appellant also asserts that counsel never informed him of his constitutional rights. However, because the record does not reflect what appellant's counsel did or did not advise him about, this issue must be rejected. State v. Green,90 Ohio St.3d 352, 375, 2000-Ohio-182 (court "summarily" rejects questions regarding what rights appellant was advised of by counsel because such matters are not contained in the record), citing State v. Ishmail (1978) 54 Ohio St.2d 402; State v.Williams, 73 Ohio St.3d 153, 1995-Ohio-275. Thus, the notion that counsel acted below any objective standard cannot be supported by this argument.
 {¶ 73} Finally, appellant argues that counsel's refusal to argue judicial bias on appeal amounts to ineffective assistance of counsel. However, as previously stated, the claim was unsupported. Therefore, it cannot be said that counsel's refusal to argue the point was below the objective standard of representation.
 {¶ 74} Because appellant failed to meet the first prong required to make a case of ineffective assistance of counsel, he necessarily must fail the venture as a whole. Strickland v.Washington (1984), 466 U.S. 668, 687; State v. Bradley (1989),42 Ohio St.3d 136. See, also, State v. Hill, 10th Dist. No. 01AP-987, 2002-Ohio-3065. Therefore, this pro se argument is without merit.
 {¶ 75} For the foregoing reasons, the decision of the trial court is reversed and appellant's conviction and sentence is vacated.
Donofrio and DeGenaro, JJ., concur.