[Cite as *State v. Harshbarger*, 2010-Ohio-4413.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO.  2-09-19

    v.

EDWARD J. HARSHBARGER,         O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Auglaize County Municipal Court
Trial Court No. 2008-CRB-887

Judgment Reversed and Cause Remanded

Date of Decision:  September 20, 2010

APPEARANCES:

    *Quentin M. Derryberry, II*  for Appellant

    *Darren L. Meade*  for Appellee

**WILLAMOWSKI, P.J.,**

{¶1} Defendant-Appellant, Edward J. Harshbarger ("Harshbarger"), appeals the judgment of the Auglaize County Municipal Court, finding him guilty of telecommunications harassment in violation of R.C. 2917.21(B). Harshbarger maintains that the trial court failed to find the specific intent required by the statute and that the verdict was against the manifest weight of the evidence. For the reasons set forth below, the judgment is reversed.

{¶2} Harshbarger was charged with telecommunications harassment (or, "telephone harassment") as a result of a single telephone call he made to Mr. Terry Leonard ("Leonard"). A bench trial was held on March 31, 2009.

{¶3} At the trial, Harshbarger testified that Leonard and Harshbarger's sister were neighbors in Wapakoneta and had adjoining backyards. Apparently there had been issues between the neighbors for several years to the point where Harshbarger's sister was trying to sell her home in order to avoid the problems and harassment she claims had been caused by Leonard and his family. The sister made several calls to the police about the situation, but the calls were placed anonymously and nothing was ever resolved. Harshbarger testified that on October 22, 2008, his sister called to tell him about another alleged incident of trespassing and harassment by the Leonards.

{¶4} Harshbarger grew up in Wapakoneta, but now lives almost two hundred miles away in Cuyahoga Falls. Harshbarger knew that a former friend worked as a detective for the Wapakoneta Police Department, so he tried to call this friend at the police department to see if he could help with his sister's problem. Harshbarger had a short discussion with the dispatcher, but he was unable to speak with his friend because he was not on duty that day.[1]

{¶5} Immediately thereafter, at approximately 4:43 pm, Harshbarger called Leonard, who was working at Papa John's Pizza[2] at the time. Harshbarger and Leonard did not know each other and had never met or spoken with each other before. Telephone records and trial testimony confirm that a brief conversation took place between the two, lasting less than three minutes.

{¶6} Harshbarger testified that after he wasn't able to speak with his friend at the police department, he decided to call Leonard in order to reason with him and to tell him to stop bothering "the neighborhood." Harshbarger claimed that Leonard responded with profanity and the discussion "took a nose-dive rather quickly" when Leonard repeatedly "dropped the F-bomb."

---

[1] A copy of this telephone conversation was admitted into evidence.
[2] His sister had told him that was where Leonard worked.

{¶7} Leonard testified that he received a phone call at work from an unknown male who called himself "Joe"[3] and who was angry and threatening. Leonard testified that "Joe" told him to quit harassing Leonard's neighbor or else the caller would come to Wapakoneta and kill Leonard. Leonard acknowledged that both he and Harshbarger were "pissed off" and both used profanity.

{¶8} After the phone call from "Joe," Leonard obtained Harshbarger's phone number and contacted the police with a complaint of telephone harassment. Later that evening, Officer Eisert from the Wapakoneta Police Department called Harshbarger and talked to him about the complaint and the call Harshbarger had made to Leonard. The officer also testified at trial and a recording of that telephone conversation was admitted into evidence. During the conversation with Officer Eisert, Harshbarger explained that he called in order to politely ask Leonard to stop bothering the neighbors, but, after Leonard repeatedly responded with profanity, Harshbarger acknowledged that he warned Leonard that if he didn't stop, he would "make his life miserable" or would "beat the shit out of him." Harshbarger adamantly denied ever threatening to kill Leonard during his phone conversation with the officer and at trial.

{¶9} The testimony of each of the three witnesses concerning the

---

[3] Although there was testimony about the anonymous nature of the phone call from the unknown male calling himself "Joe," there was also testimony that Harshbarger's middle name was Joseph and that his family called him Joe.

-4-

telephone call was generally consistent with one another with the exception of (1) which party first used profanity and caused the conversation to become heated and threatening; and, (2) the extent to which Harshbarger threatened Leonard.

{¶10} On April 23, 2009, the trial court issued its judgment finding Harshbarger guilty as charged with the offense of telephone harassment, a first degree misdemeanor. The sentencing hearing was held on June 2, 2009, and Harshbarger was ordered to pay a fine of $500, plus costs, and to complete one hundred hours of community service. He was also placed on unsupervised community control sanctions through June 1, 2011, and ordered not to have any contact with Leonard or members of Leonard's household.

{¶11} It is from this judgment that Harshbarger appeals, presenting the following two assignments of error for our review.

### First Assignment of Error

**The Court failed to apply the plain meaning of R.C. 2917.21(B) and the case law applicable thereto.**

### Second Assignment of Error

**The verdict [sic] was against the manifest weight of the evidence**.

{¶12} In his first assignment of error, Harshbarger maintains that the statute creates a specific-intent crime and that the State failed to prove beyond a reasonable doubt that Harshbarger's specific purpose in making the telephone call was to harass Leonard. He argues that the legislature has created this substantial

burden to limit the statute's scope to criminal conduct, not the expression of offensive speech.

**{¶13}** Harshbarger was charged under R.C. 2917.21(B), which states:

> **No person shall make \*\*\* a telecommunication \*\*\* with purpose to abuse, threaten or harass another person.**[4]

"When adjudicating a charge of telephone harassment, the key issue is not whether the alleged victim is annoyed or otherwise affected by the call; rather, the purpose of the person who made the call is at the heart of the offense." *State v. Patel*, 7th Dist. No. 03 BE 41, 2004-Ohio-1553, ¶7, citing *State v. Bonifas* (1993), 91 Ohio App.3d 208, 211-212, 632 N.E.2d 531. The state has the burden of establishing that the caller's specific purpose in making the telecommunication was to abuse, threaten, or harass another person.[5] *State v. Ellison*, 178 Ohio App.3d 734, 2008-Ohio-5282, 900 N.E.2d 228, ¶16. See, also, 3 OJI-CR 517.21(B). A person acts purposely when it is his specific intention to cause a certain result. R.C. 2901.22(A).

**{¶14}** Harshbarger's claim that the state failed to prove the element of intent challenges the sufficiency of the evidence to sustain his conviction. When

---

[4] The relevant portion of the statute was abbreviated for clarity. The entire text of R.C. 2917.21(B) states: "No person shall make or cause to be made a telecommunication or permit a telecommunication to be made from a telecommunication device under the person's control, with purpose to abuse, threaten, or harass another person."

[5] In contrast, the first section of the telecommunications harassment statute does not require the same specific intent as R.C. 2917.21(B), under which Harshbarger was charged. R.C. 2917.21(A) states that no person shall *knowingly* make a telecommunication to another if the caller does any one of several enumerated acts.

reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 1997-Ohio- 52, 678 N.E.2d 541, 546 (stating, "sufficiency is the test of adequacy"); *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503. The standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jenks*, supra.

{¶15} Our review of the record reveals considerable evidence indicating that Harshbarger's purpose in making the telephone call was to try to solve the problem with his sister's neighbor. Harshbarger continually maintained, both at trial and in his admissions to Officer Eisert, that he was merely trying to talk to Leonard about not causing trouble for the neighbors. Harshbarger admitted to *eventually* using profanity and threatening language, but insisted that was not the purpose of the telephone call and it occurred only after he was provoked by Leonard's repeated profanity.

{¶16} In his trial testimony, Leonard also acknowledged that Harshbarger said "you need to leave my family [alone] or whatever you know, *and then* he started to get pissed off ***." (Trial Tr. p. 9, emphasis added.) In its judgment

entry, the trial court noted that "Mr. Leonard testified that Mr. Harshbarger *ultimately* told him that he would come down and shoot him or kick his f***in' a** or send someone down to do it for him." (Emphasis added.) The trial court first found that "[Harshbarger] told Mr. Leonard that he needed to leave his (Mr. Harshbarger's loved ones) alone."

**{¶17}** In *State v. Patel*, supra, the trial court held that even though the message left by the defendant on the recipient's answering machine included considerable profanity, "reprehensible" language, and name calling, the record indicated that the actual purpose of the telephone call was to inform the alleged victim that he could return to work if he did not cause trouble. 2004-Ohio-1553, at ¶48.

> **[A]s the actual purpose of his making the call was not to use profanity and name calling, the mere inclusion of them in the message does not raise the incident to the level of telephone harassment. To hold so would essentially mean that any call placed with a legitimate purpose could somehow transform into telephone harassment by the use of profanity, an end that is not warranted by the existing statute.**

Id. See, also, *State v. Ellison*, supra, 2008-Ohio-5282 (evidence of specific intent to harass was insufficient to support conviction of telecommunications harassment where defendant's actions could have served a legitimate purpose of warning others of what defendant believed to be criminal behavior on part of complainant).

{¶18} The fact that Harshbarger attempted to talk with his friend at the police department about the neighbor problem before he contacted Leonard further substantiated that this was his intended purpose. At trial, Leonard testified that Harshbarger was drunk and very "pissed off" right from the beginning of the call. However in the recording of the call Harshbarger made to the police dispatcher, just two minutes prior to talking with Leonard, his demeanor was calm and polite, and he did not sound intoxicated.

{¶19} Evidence of a caller's intent to annoy or harass may be direct or indirect. *State v. Lucas*, 7th Dist. No. 05 BE 10, 2005-Ohio-6786 (evidence was sufficient to support conviction where defendant called the house of his former girlfriend several times in the early morning hours and repeatedly hung up on the mother of his former girlfriend). Although the statute does not require multiple calls in order to constitute telephone harassment, the fact that the caller made numerous calls is often indicative of the caller's specific purpose to harass. See, e.g., *State v. Dulaney*, 180 Ohio App.3d 626, 2009-Ohio-79, 906 N.E.2d 1147 (finding that, by the *third* phone call containing threats and profanity, a rational trier of fact could have found defendant guilty of telephone harassment); *State v. Dobrovich*, 7th Dist. No. 04 BE 10, 2005-Ohio-1441 (holding that evidence was sufficient to show that defendant purposely called victim with intent to harass her, as required to support convictions for telephone harassment, where defendant

made numerous vulgar, threatening telephone calls to victim and victim told defendant "50 to 100 times" to stop calling her); *State v. Baron*, 8th Dist. No. 81914, 2003-Ohio-5376 (finding that defendant had no legitimate purpose in continually calling and then hanging up over a period of two days, including approximately 25 times in less than an hour on the first day). In the case before us, Harshbarger made one telephone call to Leonard, lasting less than three minutes, and never called again.

{¶20} In its judgment entry, the trial court concluded that "[w]hile the Court would believe from the language used by Mr. Leonard as a part of his testimony that he was profane in his portion of the conversation with the defendant, the Court finds that the defendant was not justified in the threat made to Mr. Leonard." However, this is not the standard required for conviction under R.C. 2917.21(B). Although the trial court found that Harshbarger "was not justified" in making a threat to Leonard, there was no finding by the trial court that Harshbarger's intent in making the call was to abuse, threaten, or harass Leonard. Nor did our review of the record find evidence that would support the conclusion, beyond a reasonable doubt, that Harshbarger's specific intent in making the telephone call to Leonard was to abuse, threaten, or harass.

{¶21} In commenting upon the "intent" standard required under a federal telephone harassment statute, the United States District Court stated that, "often in

the affairs of men *** conversations may be or become more or less unsatisfactory, unpleasant, heated, or vulgar.  Up to a point these are the normal risks of human intercourse, and are and should be below the cognizance of the law. ***  If this section were drawn or interpreted any more broadly, countless people would be criminalized." *United States v. Darsey* (E.D.Pa. 1972), 342 F.Supp. 311, 314.   Although the wording of the federal statute[6] was somewhat narrower than the statute in this case, we believe that R.C. 2917.21(B)'s mandate requiring the finding of a specific "purpose to abuse, threaten, or harass," in making the call serves a similar function.  As discussed above, this particular section of the statute creates a specific-intent crime, requiring the state to prove the defendant's specific purpose to harass beyond a reasonable doubt. *State v. Ellison*, 2008-Ohio-5282, at ¶15.   There is an important reason for requiring proof of specific intent:

> **The burden is not met by establishing only that the defendant knew or should have known that her conduct would probably cause harassment.  *The legislature has created this substantial burden to limit the statute's scope to criminal conduct not the expression of offensive speech.***

Id.  (Emphasis added.)

**{¶22}** We find that the record does not contain any evidence that Harshbarger made the telephone call with purpose to abuse, threaten, or harass.

---

[6]The statute, former 47 U.S.C.A. § 223(1)((D), required that the intent be "solely to harass."

The Dissent's reasoning, however, *presumes* that the trial court must have found the required element of specific intent because it ultimately found that Harshbarger was guilty. Utilizing this reasoning would eliminate the need for appellate review because, if a defendant is found guilty, then a reviewing court must assume that the trial court found all of the elements of the crime and correctly applied the law. We agree with the Dissent's assertion that the trial court was in a better position to weigh the evidence and assess the credibility of the witnesses. However, our review of the record shows that it was devoid of any evidence that the actual purpose of the call was to make a threatening statement *prior to* Harshbarger being provoked by Leonard.

{¶23} We also acknowledge that it is not necessary to have direct evidence of a defendant's intent. "Because the intent of an accused dwells in his or her mind and can never be proved by the direct testimony of a third person, it must be gathered from the surrounding facts and circumstances." *State v. Treesh*, 90 Ohio St.3d 460, 484-85, 2001-Ohio-4, 739 N.E.2d 749; *State v. Huffman* (1936), 131 Ohio St. 27, 1 N.E.2d 313. Although intent can be inferred from relevant circumstantial evidence, such an inference will not support a conviction if it is based on the mere stacking of inference upon inference. *State v. Cowans*, 87 Ohio St.3d 68, 78, 1999-Ohio-250, 717 N.E.2d 298. It is certainly not necessary, nor likely, for a defendant to directly admit an element of the offense. A trier of fact

must often make reasonable inferences to determine intent, but those inferences must be based upon something more than the fact that the defendant committed the act. Otherwise, there would be no need to require a mens rea as a necessary element for conviction. Although we certainly agree that intent can be inferred, there must be some evidence from which that intent could be inferred, i.e., multiple phone calls, calling after being told to stop, history between the parties, etc. There was no such evidence in this case. Here the Dissent is inferring that the trial court made the inference of intent because he was found guilty

{¶24} There was never any question that Harshbarger made threatening statements to Leonard – Harshbarger himself acknowledged that fact from the beginning. And, he likely intended to make those threats *at the time he uttered the words.* But, it cannot be proven nor inferred from the facts in the record that he intended to threaten Leonard *at the time he initially made the telephone call.* When looking at the sufficiency of the evidence, an appellate court must view the facts in a light most favorable to the prosecution. However, it may not infer facts that have no basis other than the trial court's ultimate conclusion. Given the facts before the trial court, even excluding Harshbarger's own testimony concerning his intentions, it was not reasonable to infer that there was a specific intent to harass or threaten Leonard when he placed the telephone call. Harshbarger first tried to contact a police officer, which does not seem like typical behavior of someone

contemplating committing a crime a moment later. Harshbarger readily admitted to Officer Eisert that he threatened Leonard. He was not trying to hide his actions, and had no belief that he had done anything wrong when discussing the matter over the phone with the officer that evening. Harshbarger did not know Leonard, he only made one call to him, and that call lasted less than three minutes. Even the testimony of the "victim" himself indicated that Harshbarger's *first* statements pertained to leaving his family alone, "and then" he "*started to*" get angry. A trier of fact may frequently find that a defendant's denial of intent to commit a crime is not credible. However, in this case, there was a considerable amount of other evidence, including the words of the "victim" himself, supporting Harshbarger's claims. Even the trial court found that it was credible that Leonard used profanity based upon the language he used in the courtroom. Leonard himself acknowledged that he used profanity.

{¶25} We also agree with the Dissent in that a trial court does not necessarily have to specify findings as to each element of an offense. However, given the length of the judgment entry and the detailed findings, we wonder why the trial court commented upon the "justification" for the action, which was not an element of the offense, but made no comment or finding of any kind on the essential element of purpose. In a recent Eighth District telephone harassment case, the Court of Appeals reversed the trial court's decision finding the defendant

guilty. *Parma Heights v. Barber*, 8th Dist. No. 93005, 2010-Ohio-3309. The defendant claimed that the trial court had misapplied the law in finding him guilty because it was inconsistent to find that he had a "purpose to harass" while at the same time finding that the evidence showed that he was repeatedly calling his wife during the pendency of their divorce in an effort to reconcile. Id. at ¶21. Likewise, in this case, we find that the trial court's finding that Harshbarger called Leonard to tell him to leave his family alone is inconsistent with a finding that his purpose in making the call was to threaten Leonard.

{¶26} Based on all of the above, we do not find that there was sufficient evidence of all of the elements of R.C. 2917.21(B) to find Harshbarger guilty beyond a reasonable doubt. Harshbarger's first assignment of error is sustained. Because our resolution of the first assignment of error is dispositive of this appeal, we find the remaining assignment of error is moot. The judgment of the Auglaize County Municipal Court is reversed and the matter is remanded for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**ROGERS, J., Concurring Separately.**

{¶27} I concur fully in the majority opinion and the conclusion that there is no evidence that, at the time Appellant initiated his phone call, Appellant had the intent (purpose) to harass or threaten Leonard. The fact that he later developed that

intent and, in fact, did make a threat during the call does not satisfy the clear and unambiguous requirements of the statute.

{¶28} I write separately because, in this case, the trial court issued written findings of fact, which is contrary to the directive contained in Crim.R. 23. When a bench trial is held, the court is to make a general finding; i.e. guilty or not guilty. See Crim.R. 23(C).

**SHAW, J., DISSENTS:**

{¶29} The evidence in the case is uncontroverted that the defendant threatened the victim over the phone. The "victim" testified that the defendant threatened him over the phone. The defendant admitted that he threatened the victim over the phone - but says that was not the purpose of the phone call. Weighing this testimony and the other evidence, the trial court as the trier of fact concluded that the defendant made the phone call with the purpose to threaten the victim and therefore found him guilty of violating R.C. 2917.21(B) which says that "no person shall make *** a telecommunication *** with purpose to *** threaten or harass another person."

{¶30} In light of the foregoing, the statement of the majority in paragraph 22 that the record is devoid of "*any* evidence" as to a purpose to threaten is remarkable. The majority apparently believes that unless the defendant directly

admits an element of the offense, the trier of fact may not infer it from the other evidence. They are wrong. Mental purpose is almost always inferred from one's actions in a criminal case. Under the majority interpretation, a jury would not be permitted to infer a trespass with purpose to commit a theft offense in a burglary case from the fact that the defendant broke into the house and stole something, unless the defendant expressly stated that was his purpose. Theft could not be established from merely taking the property without the permission of the owner and selling it to another, unless the defendant expressly stated it was his purpose to permanently deprive the owner of the property. And killing another with a firearm would apparently never be sufficient to establish a purpose to cause the death of another unless the defendant stated that was his purpose.

{¶31} In this case, the defendant's admissions, the credibility (or lack thereof) of his denial of purpose, and the victim's testimony about the call, all provide an ample basis for any trier of fact to reasonably infer the purpose of the phone call. However, because the trial court simply chose to share its process of witness evaluation in the judgment entry of conviction by saying that "*** the court finds that the defendant was not justified in the threat made to Mr. Leonard," the majority now says the trial court has failed to determine that a purposeful threat was made.

-17-

{¶32} Nothing in the trial court's comment about the threat being unjustified is inconsistent with the obvious determination by the trial court in its judgment entry that the defendant made the phone call with the purpose to threaten the victim as charged. The trial court in this case set forth the charged offense at the outset of its final judgment entry. Although it might be good practice to do so, I know of no requirement that the trial court in a bench trial again recite and reiterate each element of the offense when announcing its judgment of "guilty as charged" at the end of the judgment entry. In any event, I fail to see how a finding that "the threat" was not justified indicates that the threat could not have been purposeful.

{¶33} In sum, the trial court clearly did not find the defendant's denial of any purpose to threaten to be credible in view of what happened during the call. From the vantage of the appellate bench, the majority has simply "re-decided" that the defendant's denial is not only credible but that it should outweigh the remaining evidence in the case as well. I fail to see how this complies with any prerogatives of the trier of fact known to Ohio law and/or any known appellate standards of review. On the contrary, it seems to me that instead of viewing the evidence in the light most favorable to the *prosecution* as required by *State v. Jenks, supra* - or even deferring to the findings of the trier of fact - the majority has actually weighed the evidence in the light most favorable to the *defendant* according to its own interpretation in order to overturn this judgment of conviction.

**{¶34}** For all of these reasons, I respectfully dissent. I would affirm the judgment of the trial court.

**/jlr**