OPINION
{¶ 1} Defendant, James Cline, appeals from his convictions and sentences for unauthorized use of a computer, conspiracy to commit aggravated arson, menacing by stalking, criminal mischief, intimidation of a crime witness/victim, and telecommunications harassment. *Page 2 
 {¶ 2} The facts of this case were set forth in our earlier opinion,State v. Cline, Champaign App. No. 2002-CA-05, 2003-Ohio-4712, as follows:
 {¶ 3} "{¶ 4} In the past Cline was convicted of harassing women who had declined to pursue relationships with him, and the trial court ordered probation. However, his probation was later revoked, and Cline was sent to prison. After his release, Cline embarked upon a series of actions that resulted in the charges contained in the two indictments involved in this case.
 {¶ 4} "{¶ 5} Between December, 1999, and the beginning of 2000, Cline met Robin Rabook, Betty Jean Smith, and Sonja Risner in internet chat rooms. After several dates with each of the three women, they declined further contact with him. As a result, Cline began to harass the women by e-mail and by telephone, at all hours of the day and night. In an apparent attempt to take revenge against the three women, Cline used his knowledge of computers and the internet, along with the women's personal information, to create havoc in their personal lives. For example, Cline locked the women out of their internet accounts, and he scheduled dates for the women, unbeknownst to them. He used their names to send vulgar messages to others, and he sent vulgar messages about the *Page 3 
women to others.
 {¶ 5} "{¶ 6} Cline also stalked Sonja. In September, 2000, Cline solicited the assistance of another woman whom he met on the internet to burn down the house where Sonja lived. That woman, Gina White, warned Sonja of sabotage to her car, and a mechanic found a mothball in the gas tank. Cline also began an intensive program of telephone harassment of Sonja. He called her repeatedly at home, and after she changed her number, he called her at work. He then began to call people all over Urbana trying to get Sonja's new phone number. Cline also ordered magazine subscriptions in her name, caused deliveries to be made to her home, advised realtors that she wanted to sell her home, and arranged to have her car towed. Cline gave Sonja's work number to many people, encouraging them to call her there. During a two-month period, Cline made over 3,000 phone calls.
 {¶ 6} "{¶ 7} While Cline was in jail in Indiana awaiting extradition to Ohio, he began writing Sonja's personal information and physical description in books in the jail, and encouraging prisoners to write to her, which several of them did. During this time, Cline continued to pursue plans to burn down her house." 2003-Ohio-4712 at ¶ 4-7.
 {¶ 7} As a result of these activities, Defendant was *Page 4 
charged in Champaign County in indictments filed on September 21, 2000 and May 17, 2001 with eighty-six counts, including telecommunications harassment, conspiracy to commit aggravated arson, criminal mischief, intimidation of a crime witness/victim, menacing by stalking, and unauthorized use of a computer. Following a jury trial in January 2002, Defendant was convicted of four counts of unauthorized use of a computer, two counts of menacing by stalking, two counts of conspiracy to commit aggravated arson, one count of criminal mischief, one count of intimidation of a crime witness/victim, and sixty-six counts of telecommunications harassment. The trial court sentenced Defendant to prison terms totaling sixty-seven and one-half years.
 {¶ 8} On direct appeal we reversed Defendant's convictions and remanded this matter for a new trial because Defendant had not executed a written waiver of his right to counsel in accordance with Crim.R. 44(C) prior to representing himself at trial. State v. Cline, Champaign App. No. 2002-CA-05, 2003-Ohio-4712. We also reversed one of Defendant's convictions for menacing by stalking because it was not supported by legally sufficient evidence. The Ohio Supreme Court reversed our decision on a finding that substantial, and not literal, compliance with Crim.R. 44(C) is all that is required. State v. Cline, *Page 5 103 Ohio St.3d 471, 2004-Ohio-5701. On remand from the Supreme Court, we concluded that the trial court did not substantially comply with Crim.R. 44(C)'s requirements for waiver of counsel, and we remanded this matter for a new trial. State v. Cline, 164 Ohio App.3d 228, 2005-Ohio-5779.
 {¶ 9} In August 2006, prior to the commencement of Defendant's new trial, the State indicted Defendant on an additional two hundred and fifty-five counts of telecommunications harassment. Following a second jury trial in November 2006, Defendant was found guilty of four counts of unauthorized use of a computer, two counts of conspiracy to commit aggravated arson, one count of menacing by stalking, one count of criminal mischief, one count of intimidation of a crime witness/victim, and one hundred seventy-six counts of telecommunications harassment. The trial court sentenced Defendant to prison terms totaling fifty-eight and one-half years.
 {¶ 10} Defendant timely appealed to this court from his convictions and sentences.
FIRST ASSIGNMENT OF ERROR
 {¶ 11} "APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED BY THE POST-APPEAL VINDICTIVE PROSECUTION OF THE CRIMINAL CHARGED IN CASE NUMBER 2000 CR 163." *Page 6 
 {¶ 12} Defendant argues that the two hundred fifty-five additional telecommunications harassment for which he was indicted in Case No. 2000-CR-163, after he had successfully appealed his convictions in Case No. 2002-CA-051, violated his rights to due process and a fair trial because those later charges were a product of prosecutorial vindictiveness. Defendant claims that the procedural history and sequence of events in this case suggest a reasonable likelihood of vindictiveness that creates a presumption of vindictiveness in this case. Thigpen v. Roberts (1984), 468 U.S. 27, 30, 104 S.Ct. 2916,82 L.Ed.2d 23; Blackledge v. Perry (1974), 417 U.S. 21, 27-28,94 S.Ct. 2098, 40 L.Ed.2d 628. Defendant further claims that the State has failed to rebut that presumption of vindictiveness.
 {¶ 13} In State v. Bradley, Champaign App. No. 06CA31, 2007-Ohio-6583, this court observed:
 {¶ 14} "{¶ 9} A rebuttable presumption of vindictiveness may arise when a trial court imposes a harsher sentence upon reconviction after a defendant has successfully appealed his conviction, North Carolina v.Pearce (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656, or when the State brings additional or more serious charges that subject Defendant to an increased punishment following his successful appeal of his *Page 7 
conviction. Blackledge v. Perry, supra; Thigpen v. Roberts,supra. With respect to post appeal increases by the prosecutor in the number or severity of the charges, the presumption arises when the sequence of events in the case poses a danger that the State might be retaliating against the accused for lawfully attacking his conviction and suggests a realistic likelihood of vindictiveness.Blackledge; Thigpen."
 {¶ 15} Defendant was originally indicted on May 17, 2001 in Case No. 2000-CR-163 on seventy-four counts of telecommunications harassment, R.C. 2917.21(B). Following Defendant's first jury trial in January 2002, Defendant was found guilty of sixty-six counts of telecommunications harassment. We subsequently reversed Defendant's convictions and remanded the matter for a new trial. See: State v. Cline, Champaign App. No. 2002-CA-05, 2003-Ohio-4712; and State v. Cline, 164 Ohio App.3d 228,2005-Ohio-5779. Prior to Defendant's retrial, on August 17,2006 the State indicted Defendant on an additional two hundred and fifty-five counts of telecommunications harassment. Following Defendant's second jury trial in November 2006, Defendant was found guilty of one hundred and seventy-six counts of telecommunications harassment.
 {¶ 16} The State initially argues that Defendant has waived *Page 8 
his claim of vindictive prosecution because Defendant never filed a motion to dismiss the additional telecommunications harassment charges on that basis after the State indicted him on those charges, and he never raised the vindictive prosecution/retaliation by the State issue in the trial court. We agree.
 {¶ 17} Defects in the institution of the prosecution and/or in the indictment must be raised before trial or they are waived. Crim.R. 12(C),(H). As a general rule, an appellate court will not consider any error the trial court committed which a complaining party could have called to the trial court's attention, but did not, at a time when the error could have been avoided or corrected by the trial court. State v.Childs (1968), 14 Ohio St.2d 56; State v. Awan (1986),22 Ohio St.3d 120; State v. Williams (1977), 51 Ohio St.2d 112.
 {¶ 18} Having failed to either file a pretrial motion to dismiss the additional telecommunications harassment charges on the grounds that they were the product of vindictive prosecution/retaliation by the State for Defendant's successful appeal of his convictions, or otherwise raise that issue in the trial court, Defendant has not preserved the issue for appellate review, and we will not consider that issue for the first time on direct appeal. *Page 9 
 {¶ 19} Even were we to assume for the sake of argument that Defendant preserved the issue for appellate review, and that the procedural history and sequence of events in this case supports a likelihood of vindictiveness with respect to the additional telecommunications harassment charges, the State has presented evidence sufficient to rebut any presumption of vindictiveness that arises from its decision to bring the additional charges following Defendant's successful appeal.
 {¶ 20} Defendant was originally charged with seventy-four counts of telecommunications harassment. Several of those counts encompassed more than one telecommunication (phone call). While preparing for Defendant's second trial, the prosecutor discovered that grouping together several telecommunications into a single count, as several counts in the original indictment did, could make the indictment defective for duplicity; that is, by joining two or more distinct offenses into a single count. United States v. Murray (C.A. 2, 1980), 618 F.2d 892, 896. To avoid such problems, acts capable of being charged as separate offenses must be charged in separate counts. Bin v. United States (C.A. 5, 1998), 331 F.3d 390, 393.
 {¶ 21} Due to these concerns over duplicity, and because a single telecommunication is sufficient to commit the offense *Page 10 
of telecommunications harassment, State v. Stanley, Franklin App No. 06AP-65, 2006-Ohio-4632, the prosecutor split those counts that had included more than one telecommunication and charged each separate telecommunication as a separate offense in its own separate count, which resulted in the additional telecommunications charges in counts 86-340.
 {¶ 22} We conclude that the reason offered by the State for why it brought the additional two hundred and fifty-five telecommunications harassment charges only after Defendant had successfully appealed his original convictions and won a reversal and a new trial, an explanation the State offered on the record in its motion for joinder of the offenses for trial, reasonably rebuts any presumption of vindictiveness that might otherwise arise from the sequence of events in this case. Defendant has not demonstrated vindictive prosecution/retaliation by the State.
 {¶ 23} Defendant's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 24} "THE TRIAL COURT ERRED BECAUSE APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 25} Defendant argues that the guilty verdicts on many of the charges regarding unauthorized use of a computer, conspiracy to commit aggravated arson, criminal mischief, *Page 11 
intimidation of a crime witness/victim, and telecommunications harassment are against the manifest weight of the evidence.
 {¶ 26} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 27} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v.Thompkins (1997), 78 Ohio St.3d 380.
 {¶ 28} In order to find that a manifest miscarriage of justice occurred, an appellate court must conclude that a guilty verdict is "against," that is, contrary to, the manifest weight of the evidence presented. See, State v. McDaniel (May 1, 1998), Montgomery App. No. 16221. The fact that the evidence is subject to different interpretations on the matter of guilt or innocence does not rise to that level. *Page 12 
 {¶ 29} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. State v.DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 30} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 31} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 Unauthorized Use of a Computer {¶ 32} R.C. 2913.04(B) provides:
 {¶ 33} "No person, in any manner and by any means, including, but not limited to, computer hacking, shall *Page 13 
knowingly gain access to, attempt to gain access to, or cause access to be gained to any computer, computer system, computer network, cable service, cable system, telecommunications device, telecommunications service, or information service without the consent of, or beyond the scope of the express or implied consent of, the owner of the computer, computer system, computer network, cable service, cable system, telecommunications device, telecommunications service, or information service or other person authorized to give consent."
 {¶ 34} In counts one, three, four and five Defendant was charged with accessing the Yahoo internet accounts of Robin Rabook, Betty Smith and Sonja Risner, without their consent, and changing their passwords to those accounts and using those accounts to send unauthorized messages.
 {¶ 35} Robin Rabook testified at trial that she briefly dated Defendant after she met him on the Internet. Rabook shared some of her sensitive personal identification information with Defendant. After their relationship ended, Rabook had to change the e-mail address of her Yahoo Internet account because someone had changed her password, which prevented her from accessing her account. Furthermore, Defendant sent Rabook's new boyfriend some photographs from a *Page 14 
weekend that Defendant and Rabook had spent together, showing Rabook in various stages of undress. After March 2000, Rabook did not use or give anyone else permission to use her previous e-mail account, but on June 10, 2000, the account was used to send a vulgar message to Urbana resident Sonja Risner.
 {¶ 36} Zanesville, Ohio resident Betty Smith was intimately involved with Defendant for a period of time after she met him on the Internet. At that time, Smith maintained two Internet accounts. After Smith's relationship with Defendant deteriorated, she was unable to access her Internet accounts because her password had been changed. In addition, Defendant created new accounts for Smith and used those to impersonate Smith and lure men to her home for the purpose of sexual activity. On June 26, 2000, Smith's Internet accounts were used to send vulgar messages to Urbana resident Sonja Risner. Smith testified that she did not send any messages to Risner.
 {¶ 37} Sonja Risner testified that she became intimately involved with Defendant after meeting him in an Internet chat room. At that time, Risner had several Internet accounts. Risner shared much of her personal information with Defendant.
In early June 2000, Defendant accessed one of Risner's accounts, and Risner noticed that the photograph accompanying her profile on that account had been replaced with a cartoon *Page 15 
figure. Risner's password for the account had also been changed. Risner never gave Defendant permission to access that account.
 {¶ 38} The jury could reasonably conclude from this evidence that Defendant violated R.C. 2913.04(B) because he accessed the Internet accounts created by Rabook, Smith and Risner without their permission. Defendant nevertheless complains that the guilty verdicts are against the manifest weight of the evidence because venue in Champaign County was not proper. Defendant points out that there is no evidence that he directly accessed the personal computer of any of the three victims, Rabook, Smith or Risner, while their computers were located in Champaign County. Rather, Defendant accessed Internet accounts provided by a California based company, Yahoo, which were used by the three victims, and Defendant accessed those accounts using his own computer which is located in Montgomery County. Thus, Defendant claims that he accessed computer networks based in California, and therefore venue in Champaign County was improper. We disagree.
 {¶ 39} R.C. 2901.12 governs venue and provides in relevant part:
 {¶ 40} "(A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject *Page 16 
matter, and in the territory of which the offense or any element of the offense was committed.
 {¶ 41} "* * *
 {¶ 42} "(H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
 {¶ 43} "(1) The offenses involved the same victim, or victims of the same type or from the same group.
 {¶ 44} "(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.
 {¶ 45} "(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.
 {¶ 46} "(4) The offenses were committed in furtherance of the same conspiracy.
 {¶ 47} "(5) The offenses involved the same or a similar modus operandi. *Page 17 
 {¶ 48} "(6) The offenses were committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination.
 {¶ 49} "(I)(1) When the offense involves a computer, computer system, computer network, telecommunication, telecommuni-cations device, telecommunications service, or information service, the offender may be tried in any jurisdiction containing any location of the computer, computer system, or computer network of the victim of the offense, in any jurisdiction from which or into which, as part of the offense, any writing, data, or image is disseminated or transmitted by means of a computer, computer system, computer network, telecommunication, telecommunications device, telecommuni-cations service, or information service, or in any jurisdiction in which the alleged offender commits any activity that is an essential part of the offense."
 {¶ 50} Defendant's misuse of Rabook's, Smith's, and Risner's Internet accounts was part of a course of continuing criminal conduct involving the same or a similar modus operandi, R.C. 2901.12(H)(5), victims of the same type or from the same group, women who had been intimately involved with Defendant but subsequently terminated their relationship with him, R.C. 2901.12(H)(1), and the criminal conduct had as its *Page 18 
objective furtherance of the same purpose or objective, the harassment and intimidation of Rabook, Smith and Risner, and especially Risner, who lives in Champaign County. R.C. 2901.12(H)(3). Furthermore, these offenses involved computers and computer networks and the dissemination of data and information using those networks to Sonja Risner, a Champaign County resident. R.C. 2901.12(I). Pursuant to R.C. 2901.12, Champaign County was a proper venue for the unauthorized use of a computer charges in this case. The guilty verdicts are not contrary to the evidence presented by the State.
 Conspiracy to Commit Aggravated Arson {¶ 51} In counts seven and eight Defendant was charged with conspiracy to commit aggravated arson, R.C. 2923.01(A), 2909.02(A), in that he planned with another person, Gina White, to burn down the home of Sonja Risner. Defendant argues that the guilty verdicts are against the manifest weight of the evidence because there is scant evidence to prove that Defendant either solicited another person to commit aggravated arson or that one of the alleged conspirators committed a substantial overt act in furtherance of the conspiracy.
 {¶ 52} R.C. 2923.01 provides, in pertinent part:
 {¶ 53} "(A) No person, with purpose to commit or to promote *Page 19 
or facilitate the commission of aggravated murder, murder, kidnaping, compelling prostitution, promoting prostitution, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, engaging in a pattern of corrupt activity, corrupting another with drugs, a felony drug trafficking, manufacturing, processing, or possession offense, theft of drugs, or illegal processing of drug documents, the commission of a felony offense of unauthorized use of a vehicle, illegally transmitting multiple commercial electronic mail messages or unauthorized access of a computer in violation of section 2923.421 of the Revised Code, or the commission of a violation of any provision of Chapter 3734. of the Revised Code, other than section3734.18 of the Revised Code, that relates to hazardous wastes, shall do either of the following:
 {¶ 54} "(1) With another person or persons, plan or aid in planning the commission of any of the specified offenses;
 {¶ 55} "(2) Agree with another person or persons that one or more of them will engage in conduct that facilitates the commission of any of the specified offenses.
 {¶ 56} "(B) No person shall be convicted of conspiracy unless a substantial overt act in furtherance of the *Page 20 
conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed.
 {¶ 57} * * *
 {¶ 58} "(F) A person who conspires to commit more than one offense isguilty of only one conspiracy, when the offenses are the subject of thesame agreement or continuous conspiratorial relationship." (Emphasis supplied).
 {¶ 59} R.C. 2909.02(A) provides:
 {¶ 60} "(A) No person, by means of fire or explosion, shall knowingly do any of the following:
 {¶ 61} "(1) Create a substantial risk of serious physical harm to any person other than the offender;
 {¶ 62} "(2) Cause physical harm to any occupied structure;
 {¶ 63} "(3) Create, through the offer or acceptance of an agreement for hire or other consideration, a substantial risk of physical harm to any occupied structure."
 {¶ 64} A conviction for conspiracy to commit arson requires proof of an agreement by two or more persons to commit arson, coupled with a substantial overt act by one of the *Page 21 
conspirators in furtherance of the conspiracy that manifests the actor's purpose or intent that the object of the conspiracy should be carried out or completed. State v. Risner (1991), 73 Ohio App.3d 19, 23.
 {¶ 65} Gina White testified at trial that after she met Defendant on the Internet, he unexpectedly appeared at her residence in West Virginia in September 2000. Defendant said he wanted White or some other person to burn Sonja Risner's house down and kill her by pouring gasoline around the foundation of the home and setting it on fire. Defendant showed White a photograph of Risner, explained where she lived, and wrote Risner's address on a piece of paper. Defendant asked White to help him find people who would be willing to commit this act. Defendant said the person committing the arson would be paid. After leaving White's home, Defendant subsequently called White and asked her whether she had found anyone to burn down Risner's home.
 {¶ 66} The jury could reasonably find from this evidence, beyond a reasonable doubt, that Defendant was guilty of conspiracy to commit aggravated arson in violation of R.C. 2923.01(A) and 2909.02(A). See:State v. Young (April 10, 1990), Montgomery App. No. 11330. The fact that White feigned agreement and did not intend to go through with the plan, but *Page 22 
instead informed Risner and contacted police, does not lessen Defendant's criminal liability. State v. Marian (1980),62 Ohio St.2d 250. The guilty verdicts are not contrary to the evidence presented by the State.
 {¶ 67} Defendant nevertheless argues that, pursuant to R.C.2923.01(F), he should have been convicted of only one count of conspiracy because both of the conspiracy offenses are the object of the same agreement or continuous conspiratorial relationship. The trial court obviously agreed, because it merged counts seven and eight for sentencing purposes and Defendant was effectively sentenced only on one count of conspiracy to commit aggravated arson, count seven. However, because R.C. 2923.01(F) bars multiple convictions, Defendant's conviction on count eight will be reversed and vacated. That relief does not affect the sentence the court imposed.
 Criminal Mischief {¶ 68} In count nine Defendant was charged with Criminal mischief, R.C. 2909.07(A)(1), on evidence that he tampered with Sonja Risner's automobile. Defendant argues that the guilty verdict is against the manifest weight of the evidence because the evidence does not demonstrate that Defendant personally did anything to Risner's vehicle. Rather, Defendant hired someone to tamper with the gas tank on *Page 23 
Risner's vehicle.
 {¶ 69} R.C. 2909.07(A)(1) provides:
 {¶ 70} "(A) No person shall:
 {¶ 71} "(1) Without privilege to do so, knowingly move, deface, damage, destroy, or otherwise improperly tamper with the property of another."
 {¶ 72} Ohio's complicity statute, R.C. 2923.03, provides in relevant part:
 {¶ 73} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 74} "(1) Solicit or procure another to commit the offense;
 {¶ 75} "(2) Aid or abet another in committing the offense;
 {¶ 76} "(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
 {¶ 77} "(4) Cause an innocent or irresponsible person to commit the offense.
 {¶ 78} "(B) It is no defense to a charge under this section that no person with whom the accused was in complicity has been convicted as a principal offender.
 {¶ 79} "* * * *Page 24 
 {¶ 80} "(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense."
 {¶ 81} Sonja Risner testified at trial that Gina White told her during a phone conversation that Defendant had put mothballs in her vehicle. Risner took her vehicle to a mechanic who discovered the gas cap was missing and that there were mothballs in the neck of the gas tank. The fuel filler door was accessible only from inside Risner's vehicle, and the mechanic found scratches on the driver's window. Even though Risner did not discuss any of this with Defendant, he sent Risner an e-mail asking her if she had purchased a new gas cap. Gina White testified at trial that while Defendant was at her home in West Virginia he admitted that he had hired someone to tamper with Risner's gas tank.
 {¶ 82} The jury could reasonably conclude from this testimony that Defendant improperly tampered with Sonja Risner's automobile in violation of R.C. 2909.07(A)(1). The guilty verdict is not contrary to the evidence presented by the State.
 Intimidation of a Crime Witness/Victim *Page 25 {¶ 83} In count ten Defendant was charged with intimidation of a crime victim, Sonja Risner, in violation of R.C. 2921.04(B), because he knowingly and by unlawful threat of harm attempted to influence, intimidate or hinder Risner in filing or the prosecution of criminal charges. Defendant argues that the guilty verdict is against the manifest weight of the evidence, inasmuch as the State's evidence regarding letters found in Defendant's Wayne County, Indiana, jail cell does not support the charge because those letters were never mailed, and the only other evidence supporting this charge related to Risner's name and address found written in library books available to inmates at the Wayne County, Indiana, jail.
 {¶ 84} R.C. 2921.04(B) provides:
 {¶ 85} "(B) No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."
 {¶ 86} Kenosis Sewell testified that he met Defendant while they were incarcerated in the Wayne County, Indiana, jail. While he was an inmate, Sewell sent a letter to Sonja Risner. *Page 26 
Sewell obtained Risner's address and other information about her from Defendant. Defendant wrote this information in a library book that Sewell had given Defendant. The information written in the library book not only included Risner's name and address but also indicated that Risner is a "whore." Sonja Risner testified that she received unwanted correspondence from at least two inmates who were at the Wayne County jail.
 {¶ 87} Deputy Randy Wright of the Wayne County Sheriff's Office testified regarding his investigation of the letters sent to Sonja Risner by inmates in the Wayne County jail. The jail makes library books from a Richmond, Indiana public library available to its inmates. Several books in the jail's library were found to contain information about Risner and Betty Smith. These books were found in three jail cells, including those of Defendant and Kenosis Sewell. During a search of Defendant's jail cell, five letters addressed to Sonja Risner and an envelope with Risner's address was also found. A sixth letter addressed to a man named Jason was also found. In that letter, Defendant asked Jason to call Risner's workplace from a payphone and tell her that "she is dead if she testifies." The letter included Risner's work telephone number. One of the letters addressed to Risner included the *Page 27 
statement that Defendant would get some guns and kill Risner.
 {¶ 88} The jury could reasonably conclude from this evidence, beyond a reasonable doubt, that Defendant wrote information about Risner in library books at the Wayne County, Indiana, jail as part of a campaign to get other inmates to contact Risner, that some of them did, and that Defendant composed letters addressed to Risner and other people in which Defendant threatened to harm Risner and urged others to do likewise. This evidence demonstrates that Defendant knowingly and by unlawful threat of harm attempted to influence, intimidate or hinder Risner in the filing or prosecution of criminal charges. The guilty verdict is not contrary to the evidence presented by the State, and the credibility of the witnesses and the weight to be given to their testimony were matters for the trier of facts, the jury, to determine. DeHass.
 Telecommunications Harassment {¶ 89} Defendant was found guilty of one hundred and seventy-six counts of telecommunications harassment, R.C. 2917.21(B), on the basis of evidence showing that he made telecommunications or permitted them to be made from a device under his control, with purpose to abuse, threaten or harass another person. Defendant argues that the guilty verdicts are *Page 28 
against the manifest weight of the evidence because there is little direct evidence that Defendant made those telecommunications, and in many instances the witnesses who received the calls could not identify the caller and were not in any event harassed or annoyed by those calls.
 {¶ 90} R.C. 2917.21(B) provides:
 {¶ 91} "No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person."
 {¶ 92} The gravamen of the offense of telecommunications harassment is not whether the person who received the call was in fact threatened, harassed or annoyed by the call, but rather whether the purpose of the person who made the call was to abuse, threaten or harass the person called. State v. Bonifas (1993), 91 Ohio App.3d 208. If a defendant's purpose or intent in making the call cannot be proved by direct evidence, it may be established by circumstantial evidence; the facts and circumstances surrounding the call. State v. Lucas, Belmont App. No. 05BE10, 2005-Ohio-6786. Direct and circumstantial evidence have the same probative value. State v. Jenks (1991), 61 Ohio St.3d 259.
 {¶ 93} Gary Foltz, a security manager with Cincinnati Bell, *Page 29 
testified that Defendant has a cellular telephone account with Cincinnati Bell. Several victims in this case reported objectionable phone calls they received to Urbana police. Foltz's testimony demonstrates that those calls originated from Defendant's cell phone. Foltz testified that between November 2, 2000 and December 2, 2000, 3,820 telephone calls were placed from Defendant's cell phone to Urbana area phone numbers, an average of one hundred and twenty-three calls a day. It can reasonably be inferred from this evidence that Defendant was the source of the phone calls.
 {¶ 94} Sonja Risner testified about e-mails she received from Defendant containing sexual, vulgar, and obscene references. Defendant ordered magazine subscriptions and other items for Risner without her consent, using personal information he obtained from Risner. Defendant also contacted several businesses in Champaign County, purportedly on Risner's behalf, including two realtors, an exterminator, an insurance agent and a towing company. Those entities solicited Risner's business as a result of Defendant's contacts. Defendant also encouraged inmates of the Wayne County jail to contact Risner, which several did.
 {¶ 95} In addition, Defendant called several people who knew Risner in order to gain information about Risner's *Page 30 
whereabouts and learn her new telephone number. Defendant also telephoned several people who knew Risner and various Urbana officials, and gave them information about Risner, including allegations that she was promiscuous and a prostitute. Defendant made numerous phone calls to Chris Ropp, Risner's future husband, and Ronald Ropp, Risner's future father-in-law, telling them that Risner was a "whore" and that something bad was going to happen to her. Defendant suggests that the calls to Chris Ropp should have been combined with the calls to Ronald Ropp and considered as but one offense because Chris lived in his father's home, which has one phone line, and all of the calls were made to that one phone number. We reject such a contention because each call to each recipient constitutes a separate offense under R.C. 2917.21(B).
 {¶ 96} The jury could reasonably conclude from this evidence that Defendant's purpose in making the phone calls was to abuse, harass or threaten Sonja Risner and others who knew her, which violates R.C.2917.21(B). The guilty verdicts are not contrary to the evidence presented by the State.
 {¶ 97} Reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way in choosing to believe the State's *Page 31 
witnesses, or that a manifest miscarriage of justice occurred. Defendant's convictions are therefore not against the manifest weight of the evidence. However, because R.C. 2923.01(F) prohibits Defendant's multiple convictions for conspiracy to commit aggravated arson, his conviction for the charge in count eight will be reversed and vacated.
 {¶ 98} Defendant's second assignment of error is sustained, in part.
THIRD ASSIGNMENT OF ERROR
 {¶ 99} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY SENTENCING APPELLANT TO A DISPROPORTIONATE SENTENCE."
FOURTH ASSIGNMENT OF ERROR
 {¶ 100} "THE TRIAL COURT ERRED BY IMPOSING A SENTENCE UPON APPELLANT IN VIOLATION OF THE EIGHTH AMENDMENT'S PROHIBITION ON CRUEL AND UNUSUAL PUNISHMENT AND ARTICLE I, SECTION 9 OF THE OHIO CONSTITUTION."
 {¶ 101} These related assignments of error raise the same issue: whether Defendant's punishment is disproportionate to the offenses he committed.
 {¶ 102} In his third assignment of error, Defendant argues that imposition of maximum sentences on nearly all of these offenses, coupled with the imposition of consecutive prison terms on forty-eight of the counts, which results in a *Page 32 
total aggregate sentence of fifty-eight and one-half years, is grossly disproportionate to the crimes he committed. Defendant points out that, given his age (39), his fifty-eight and one-half year sentence is for practical purposes a life sentence, and that out of the one hundred and eighty-five counts he was found guilty of committing, one hundred and eighty of those, including all of the telecommunications harassment charges and the four unauthorized use of a computer charges, are low level felonies of the fifth degree.
 {¶ 103} In his fourth assignment of error, Defendant argues that his punishment is so grossly disproportionate to the crimes he committed that it violates the Eighth Amendment's cruel and unusual punishment clause.
 {¶ 104} The record of the November 14, 2006 sentencing hearing amply demonstrates that the trial court considered the purposes and principles of felony sentencing, R.C. 2929.11, and the seriousness and recidivism factors in R.C. 2929.12. The court also considered the nature and magnitude of Defendant's offenses, his complete lack of remorse, and his prior criminal history, which includes a pattern of conduct strikingly similar to Defendant's criminal conduct in this case. The sentences imposed, while the maximum in many cases, were nevertheless within the applicable ranges authorized by *Page 33 
R.C. 2929.14(A).
 {¶ 105} After State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the appellate court's standard of review when examining felony sentences is an abuse of discretion. State v. Slone, Greene App. No. 2005CA79,2007-Ohio-130. That standard connotes more than a mere error of law or judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams (1980),62 Ohio St.2d 151. Ordinarily, a trial court does not abuse its discretion when it imposes a sentence within the permissible range authorized by R.C.2929.14(A). State v. Cowan, 167 Ohio App.3d 233, 2006-Ohio-3191, at ¶ 22.
 {¶ 106} With respect to proportionality and consistency in felony sentencing, R.C. 2929.11(B) states that sentence shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." This provision does not mandate specific findings. Rather, it sets forth objectives for sentencing courts to follow. See: State v. Dooley, Montgomery App. No. 22101, 2007-Ohio-7160. Furthermore, a review of the sentencing hearing in this case discloses that Defendant did not raise this issue in the trial *Page 34 
court by offering a basis on which to compare his sentence with both sentences in more serious crimes and with the sentences imposed upon similarly situated defendants charged with similar crimes.
 {¶ 107} Nevertheless, the trial court did discuss the issue of proportionality during sentencing. The trial court indicated that it was aware of a number of other cases involving telephone harassment, and that none of those other cases even remotely approach the magnitude of Defendant's criminal conduct in this case, which the court characterized as "staggering and mind boggling." The court considered the manner in which Defendant spoke about the victims, the wide circulation given to that, and the fact that this conduct was often accompanied by threats against the victims. The court noted that the sheer magnitude of Defendant's conduct makes this case unique. For example, in a one month period Defendant placed over 3,800 phone calls, an average of nearly 130 calls per day. The trial court observed that when one considers all the facts and circumstances, it is difficult to imagine the extent of the injury caused by Defendant's sadistic pattern of behavior, which continued even after Defendant was incarcerated in Indiana.
 {¶ 108} Given these facts and circumstances, the *Page 35 
complete lack of any remorse on Defendant's part, and Defendant's history of criminal convictions which includes a pattern of criminal conduct strikingly similar to his conduct in the present case, we cannot find that Defendant's sentence is grossly disproportionate to the offenses he committed, given the need to (1) punish Defendant and (2) protect the public from future crime by Defendant. R.C. 2929.11(A). No abuse of discretion by the trial court has been demonstrated.
 {¶ 109} Defendant also complains that the sentences imposed violate his Sixth Amendment rights per Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. Defendant has forfeited his right to argue a Blakely issue on appeal because he failed to raise that objection at the time of sentencing. State v. Payne, 114 Ohio St.3d 502,2007-Ohio-4642; State v. Dixon, Montgomery App. No. 21796,2008-Ohio-184. Even so, the record does not demonstrate a violation of Defendant's Sixth Amendment rights.
 {¶ 110} The Eighth Amendment to the United States Constitution and Article I, Section 9 of the Ohio Constitution prohibit cruel and unusual punishments. Cruel and unusual punishments are those which under the circumstances would be considered shocking to any reasonable person: punishments which are so disproportionate to the offense as to shock the *Page 36 
moral sense of the community. McDougle v. Maxwell (1964),1 Ohio St.2d 68; State v. McConnell, Montgomery App. No. 19993, 2004-Ohio-4263.
 {¶ 111} We cannot find that Defendant's fifty-eight and one-half year sentence is shocking to the moral sense of the community, given the magnitude and heinous nature of his offenses, which we have already discussed. Defendant harassed three women after they terminated intimate relationships with him. In particular, Defendant terrorized Sonja Risner by stalking her, tampering with her motor vehicle, plotting to burn down her house, and threatening her life. Defendant systematically engaged in a pattern of sadistic criminal conduct designed to harass and intimidate Risner. Even after Defendant was arrested in Wayne County, Indiana, he encouraged inmates at the county jail to contact Risner, and several of them did so.
 {¶ 112} Defendant's harassment campaign included not only Risner but also people who knew her. Defendant left obscene telephone messages for people simply because they knew Risner. Over forty people contacted law enforcement in November 2000 after they received telephone messages from Defendant. More than 3,800 telephone calls were made by Defendant in one month as part of his harassment campaign. *Page 37 
Moreover, Defendant previously engaged in similar conduct in relation to another victim in Montgomery County.
 {¶ 113} In short, Defendant sought to emotionally destroy Sonja Risner, and given the magnitude and far-reaching nature of his criminal conduct and its effects on Risner and her family and friends, it cannot be said that Defendant's sentence is so grossly disproportionate to his offenses that it shocks the moral sense of the community and constitutes cruel and unusual punishment.
 {¶ 114} Defendant's third and fourth assignments of error are overruled.
FIFTH ASSIGNMENT OF ERROR
 {¶ 115} "THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO CONSECUTIVE TERMS OF INCARCERATION BY FAILING TO MAKE REQUIRED FINDINGS AND STATEMENTS REQUIRED PURSUANT TO O.R.C.2929.14 AND 2929.19."
 {¶ 116} Defendant argues that the trial court failed to make the findings necessary to impose consecutive sentences as required by R.C.2929.14(E)(4), and further failed to articulate its reasons for those consecutive sentences pursuant to R.C. 2929.19(B)(2)(c).
 {¶ 117} An examination of the November 14, 2006 sentencing hearing clearly discloses that the trial court did *Page 38 
in fact make the statutory findings required for imposing more than minimum sentences, R.C. 2929.14(B)(1)and(2), maximum sentences, R.C.2929.14(C), and consecutive sentences, R.C. 2929.14(E)(4), and articulated its reasons for those sentences. R.C. 2929.19(B)(2).
 {¶ 118} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-956, the Ohio Supreme Court, applying the rule of Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, declared R.C.2929.14(B),(C),(E)(4) and R.C. 2929.19(B)(2) unconstitutional and severed those provisions from the remainder of the sentencing statutes. The Court stated that trial courts have full discretion to impose any sentence within the applicable statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than minimum sentences. Id. at Syllabus ¶ 7.Foster applies to cases that were on direct appeal or still pending in the trial court when Foster was decided. State v. Dunn, Montgomery App. No. 21553, 2007-Ohio-1666, at ¶ 10.
 {¶ 119} At the time Foster was decided on February 27, 2006, Defendant's convictions had not yet become final because the case was pending in the trial court awaiting a new trial pursuant to our reversal of Defendant's convictions and remand *Page 39 
of this matter for a new trial in Defendant's direct appeal. Therefore,Foster applies to this case. However, as we noted above, because Defendant's sentences were imposed after Blakely was decided and Defendant failed to raise a Blakely objection when his sentences were imposed, he has forfeited any Foster error. State v. Payne,114 Ohio St.3d 502, 2007-Ohio-4642.
 {¶ 120} Defendant's fifth assignment of error is overruled.
 Conclusion {¶ 121} Having sustained the second assignment of error, in part, we will reverse and vacate Defendant's conviction and sentence for the conspiracy to commit aggravated arson offense charged in count eight of the indictment. The second assignment of error is otherwise overruled. The remaining assignments of error are overruled, and with respect to them, the judgment of the trial court will be affirmed.
 WOLFF, P.J. And BROGAN, J., concur. *Page 1