[Cite as *State v. Jervis*, 2014-Ohio-3218.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 13-CA-97 |
| | : | |
| WILLIAM JERVIS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Licking County
Municipal Court, Case No. 12-CRB-
2598


JUDGMENT:                    AFFIRMED


DATE OF JUDGMENT ENTRY:      July 18, 2014


APPEARANCES:

For Plaintiff-Appellee:                For Defendant-Appellant:

AMY S. DAVISON                         ERIC J. HOFFMAN
40 West Main St.                       338 South High Street
Newark, OH 43055                       Columbus, OH 43215

*Delaney, J.*

{¶1} Defendant-Appellant William Jervis appeals the September 26, 2013 Judgment of Conviction of the Licking County Municipal Court. Plaintiff-Appellee is the State of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} Attorney Jennifer Amos came in contact with Defendant-Appellant William Jervis when Jervis contacted her office to schedule an appointment for an initial consultation with Verne Lindenmayer, the husband of Jervis's girlfriend, Stephanie Lindenmayer. Verne and Stephanie Lindenmayer were married, but separated, and wanted to get a divorce. Jervis was in a romantic relationship with Stephanie Lindenmayer.

{¶3} The Lindenmayers were divorced. In 2012, Amos filed a post-decree motion on Verne Lindenmayer's behalf requesting the termination or modification of spousal support.

{¶4} On November 2, 2012, Amos served a subpoena upon Jervis requesting a copy of his business records for 12 months. On that same day, Amos received a fax sent by Jervis that stated in the notes section, "Eat Shit!" The third and fourth pages of the fax were a copy of the subpoena served on Jervis on November 2, 2012.

{¶5} Amos contacted the Newark Police Department. Amos was familiar with Jervis's behavior and wanted to document the fax in case Jervis's conduct escalated. She also wanted his conduct to stop. She had received previous emails and phone calls from Jervis in the past where he expressed he was not happy with Amos. She had previously sent him an email asking him to stop.

{¶6} Jervis did not deny sending the fax. Jervis stated he sent the fax telling Amos to "eat shit" because he was highly upset when he was served with the subpoena. Jervis felt he had nothing to do with the domestic relations case and Amos's records request was outrageous. Jervis did not contact an attorney to respond to the subpoena nor did he file a motion with the domestic relations court to quash the subpoena.

{¶7} On November 29, 2012, Amos received another fax from Jervis. The notes section of the fax stated, "You are a POS." The third page of the fax was a photograph of Jervis looking at the camera with his middle finger raised. Amos recognized Jervis in the photograph.

{¶8} Jervis sent the November 29, 2012 fax to Amos because he learned from calling the domestic relations court that Amos filed a motion for contempt for Jervis's failure to produce the his records.

{¶9} Amos contacted the Newark Police Department. Officer Jared Angle of the Newark Police Department took a report from Amos on November 30, 2012. Officer Angle telephoned Jervis that same day. Jervis recorded the phone call between himself and Officer Angle. The recorded phone call was submitted as an exhibit at trial. During the phone call, Officer Angle asked Jervis to stop contacting Amos. Jervis said that he felt Amos was "fucking" with him and he was going to rock her world when he subpoenaed her records. Jervis stated in the phone call with Officer Angle that he meant every word he said and "a picture is worth one thousand words." He said to Officer Angle that instead of faxing Amos, he would put them in the U.S. mail. Officer Angle explained that Jervis could be charged with telecommunication harassment.

Jervis stated he noted the Officer's statement. Later in the conversation, Jervis said, "now, I'm going to take whatever economic resources that I have and I'm going to rock her fucking world because I'm sick of her bullshit."

{¶10} After Officer Angle's phone conversation with Jervis, Officer Angle completed his police report and it was submitted to the Law Director for review.

{¶11} By consent agreement between Amos and Jervis, Amos obtained a civil stalking protection order against Jervis for a period of two years.

{¶12} On December 5, 2012, Jervis was charged with one count of telecommunication harassment, a first-degree misdemeanor in violation of R.C. 2917.21(B), and one count of menacing, in violation of R.C. 2903.22. Jervis pleaded not guilty to the charges.

{¶13} The trial court dismissed the menacing charge at the request of the State. The matter went to trial before a jury on September 26, 2013.

{¶14} The jury found Jervis guilty of one count of telecommunication harassment. The trial court imposed a 180-day jail sentence, with 150 days suspended and a $250.00 fine. Jervis was placed on probation, ordered to undergo mental health treatment, maintain employment, and to have no contact with Amos, her family, or her employees.

{¶15} Jervis appealed his conviction and sentence to this court. The trial court granted a stay of proceedings.

**ASSIGNMENT OF ERROR**

{¶16} Jervis raises one assignment of error:

{¶17} "DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THE SAME."

**ANALYSIS**

{¶18} Jervis argues his conviction for telecommunication harassment was against the manifest weight and sufficiency of the evidence. We disagree.

{¶19} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins,* 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶20} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the

credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra,* 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶21} Jervis was convicted of telecommunication harassment, in violation of R.C. 2917.21(B). The statute reads:

> No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person.

A person acts "purposely" when "it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). When adjudicating a charge of telephone harassment, the key issue is not whether the alleged victim is annoyed or otherwise affected by the call; rather, the purpose of the person who made the call is at the heart of the offense. *State v. Bonifas*, 91 Ohio App.3d 208, 211–212, 632 N.E.2d 531 (3rd Dist.1993). The mere use of profanity in a telecommunication does not transform that telecommunication into harassment for purposes of the statute. *State v. Patel*, 7th Dist. Belmont No. 03 BE 41, 2004-Ohio-1553, ¶ 48.

{¶22} Jervis argues the evidence at trial revealed that his purpose in sending the two faxes to Amos was to express his frustration with the subpoena and the motion for contempt. He contends the evidence demonstrated that his intention was to stand up to Amos, whom he felt was making his girlfriend's life miserable. At trial, he testified that he should have handled the situation differently. Jervis states there was no evidence to show that his specific intent was to abuse, threaten, or harass Amos when he sent her the two faxes.

{¶23} The State argues Officer Angle's telephone conversation with Jervis provides evidentiary support that Jervis's purpose was to harass or abuse Amos when Jervis sent the two faxes to Amos. In the recorded telephone call, Jervis stated to Officer Angle that he meant every word he wrote on the faxes and that a picture was worth one thousand words. He stated that "now, I'm going to take whatever economic resources that I have and I'm going to rocking her fucking world because I'm sick of her bullshit."

{¶24} When Jervis received the subpoena, he did not consult an attorney to respond to the subpoena or file a motion to quash the subpoena. When he learned of the motion for contempt, he again did not consult an attorney or respond to the motion. He instead sent two faxes to Amos that stated, "eat shit" and "you are a POS," attaching a photograph of Jervis giving the middle finger. Jervis acknowledged at trial that he did not handle the situation appropriately.

{¶25} We have reviewed the entire record and we find the evidence in this case supports the determination of the jury. Jervis testified that his purpose in sending the two faxes to Amos was not to harass, abuse, or threaten Amos; he sent the faxes to

express his frustration. However, Jervis's phone call with Officer Angle where Jervis states that he is going to use his economic resources to rock Amos's world supports the jury's conclusion that Jervis's purpose in sending the faxes was to harass, threaten, or abuse Amos. Amos had previously received emails and phone calls from Jervis where he expressed he was not happy with Amos. In reviewing the legal sufficiency of the evidence to support a verdict by the trier of fact, it is the mind of the trier of fact, rather than the reviewing court, that must be convinced. *State v. Thomas,* 70 Ohio St.2d 79, 434 N.E.2d 1356 (1982). In applying this standard of review, the question of credibility of conflicting testimony and the weight to be accorded certain evidence are matters left primarily to the trier of fact. *State v. Fox*, 5th Dist. Licking No. 13-CA-71, 2014-Ohio-1652, ¶ 18 citing *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility. *Id.* at ¶ 36.

{¶26} Jervis's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Jervis's sole Assignment of Error is overruled.

**CONCLUSION**

{¶27} The judgment of the Licking County Municipal Court is affirmed.

By:  Delaney, J.,

Gwin, P.J. and

Farmer, J., concur.